The opinion of the Court was afterwards delivered by
Parsons, C. J.
The demandants sued the tenant in a writ of entry, counting on their own seisin within thirty years, and demand *366 ing the northerly half of lot numbered thirty-two in the second range of lots, of which they had been disseised by the tenant. On the trial, upon the general issue, the jury found a verdict for the demandants; and the tenant moves for a new trial, because, as he supposes, the verdict was against evidence, which is reported by the judge.
The tenant’s title was under a release from James Springer, who, as the tenant alleges, entered more than thirty years before, and disseised the demandants; for no evidence was given that James entered claiming any title or right to the land.
The statute of 1786, c. 13, limits the time of suing any real action by any corporation, declaring on its own seisin, to thirty years next after such seisin. And the tenant insists that, by virtue of this statute, the demandants are barred by the disseisin done to them by his releasor in 1775, which is more than thirty years before the teste of their writ.
The law upon this subject seems to be very well settled. When a man is once seised of land, his seisin is presumed to [*418] * continue, until a disseisin is proved. When a man enters on land, claiming a right or title to the same, and acquires a seisin by his entry, his seisin shall extend to the whole parcel, to which he has a right; for, in this case, an entry on part is an entry on the whole. When a man, not claiming any right or title to the land, shall enter on it, he acquires no seisin, but by the ouster of him who was seised, and he is himself a disseisor. To constitute an ouster of him who was seised, the disseisor must have the actual exclusive occupation of the land, claiming to hold it against him who was seised, or he must actually turn him out of possession, (a) When a disseisor claims to be seised by his entry and occupation, his seisin cannot extend further than his actual exclusive occupation ; for no further can the party seised be considered as ousted; for the acts of a wrong-doer must be construed strictly, when he claims a benefit from his own wrong, (b)
Let us now consider the evidence, as applicable to these prin ciples. The demandants proved a title to the tenements demanded and a seisin in 1769. This seisin must be presumed to be continued until they were disseised, as they continued to claim title to the land. James Springer entered on the front lot numbered thirty-two in 1775. He continued in the occupation of that lot, improving and fencing a part, and living on it until he died; having, in *367 the year he entered, caused it to be run round by a surveyor, and trees marked on the lines. This land is not demanded. But the northerly half of lot numbered -thirty-two on the second range is demanded. And it appears that when he surveyed the front lot in 1775, he at the same time caused the demanded premises to be run round by the surveyor, and the lines marked. There is no evidence that he ever fenced any part of the land demanded until 1702, which is within thirty years, or exercised any act of ownership on it, except that he' sometimes cut the grass on a small meadow which was part of it. Having fenced a part in 1792, he conveyed the premises to the tenant, who entered and has occupied the same under his deed ever since.
On considering the evidence, we are satisfied that the demandants were not disseised until 1792, by the entry of the tenant; that the running round the land by a surveyor, and * marking the'lines, by the direction of one who claims [*419 J no title to the land, is not such an exclusive occupation of the land, as can amount to an ouster or disseisin of the demandants. Neither can the occasional cutting of the grass on the meadow by Springer, who does not appear to have claimed the land, amount to a disseisin, (c)
To constitute a disseisin of the owner of uncultivated lands by the entry and occupation of a party not claiming title to the land, the occupation must be of that nature and notoriety, that the owner may be presumed to know that there is a possession of the land adverse to his title; otherwise a man may be disseised without his knowledge, and the statute of limitations may run against him, while he has no ground to believe that his seisin has been inter rupted. (d)
As the tenant set up no title prior to 1792, but relied entirely on the statute as a bar, and as it appears to us, from the facts reported, that the demandants were seised within thirty years next before the teste of their writ, we are of opinion that the conclusion made by the jury from the evidence in the cause was legal, and that their verdict must stand.

Let judgment be entered according to the verdict.

 [Boston Mill Corporation vs. Bulfinch, 6 Mass. Rep. 824. — Ed.]

 [Poignard vs. Smith, 8 Pick. 272. — Brimmer vs. The Proprietors of the Long Wharf, 5 Pick. 31. — Rust vs. The Boston Mill Corporation, 6 Pick. 158.— Pray vs. Pierce, 7 Mass. Rep. 381. — Ed.]

 [Leach vs. Woods, 14 Pick. 461.—Ed.]

 [Sparhawk vs. Bullard, 1 Metc. 95. — Barker vs. Salmon, 2 Metc 32.—Bates vs. Norcross, 14 Pick. 224. —Ed.]