## BRIGGS THOMAS *versus* The Inhabitants of MARSHFIELD.

In 1692 a highway was laid out the whole length of an extensive beach, and without an award of damages to any person, for the land so taken, and from the beach through the complainant's farm to a county road, and for more than sixty years he had kept a gate across the way leading to such county road. The beach was a place of common resort for fishermen, fowlers and haymakers, coming from the town in which the beach was situate, and from the adjacent towns, who time out of mind had been used to turn their horses upon the beach for depasturing. The pasture in which the complainant usually depastured his cattle adjoined the beach, and there being no fence between his pasture and the beach, the cattle fed at pleasure on the beach. It was *held*, that whether the fee of the beach was in the town or in the commonwealth, the complainant could not, by such enjoyment, however long continued, acquire a prescriptive right of commonage, because it was a permissive and not an adverse enjoyment.

THE complaint alleges, that by *St.* 1826, *c.* 81, (revived by *St.* 1828, *c.* 124, and accepted by the town of Marshfield in May 1829,) all neat cattle, horses and sheep were prohibited from going at large on Marshfield beach, in that town, and that it was enacted, that any person having any legal title to the beach, or any part thereof, should be compensated by the town for any injury he might sustain under the provisions of the statute, to be estimated in the manner provided by law for persons injured by the location of highways ; that at the time of the enactment of the statute, the complainant was seised in fee of a farm situate in Marshfield, bounded east by the beach, with its privileges and appurtenances ; and that one of the appurtenances was, and for the time whereof the memory of man is not to the contrary, has been, and still is, a right of commonage on that part of the beach which lies north of Hewitt's island, for all such neat cattle, horses and sheep as are levant and couchant upon the farm.

The respondent's fourth plea was, that the complainant had sustained no damage under any of the provisions of the statute ; and upon this plea issue was joined.

The complainant, in order to sustain the issue on his part, produced an ordinance of the colonial government, passed July 7, 1685, and certain copies from the records of the town of Marshfield, and he contended that by the ordinance a fee was conveyed to the town. The ordinance

recites, that several parcels of land or farms upon Green's Harbour river, the South river and the North river, had been granted by the governor &c. to divers persons, and that when the bounds were set to Duxbury township " the said farms and commonage unto the said farms " were excepted out of that township, and that in the year 1640 they were constituted a township, by the name of Marshfield, and that afterwards, by agreements between Duxbury and Marshfield and between Marshfield and Scituate, the bounds of Marshfield were settled (in the manner described in the ordinance, and so as to include the complainant's farm and the beach in question) ; and the ordinance then confirms the grants to which it refers, and the bounds of the town of Marshfield, " to have and to hold to the said town of Marshfield, and to all the respective proprietors of the land within the boundaries of the same, their and every their respective heirs and assigns forever, with all and singular the rights, members, benefits, profits, privileges, commons, fishings, coves, creeks, harbours, rivers, hereditaments and appurtenances whatsoever, within, between, before, arising or any wise accruing thereunto." A copy from the town records of a supposed grant, of 1645, was as follows : — " At the same time such commoning as lies upon the neck of land between the South river and Green's Harbour river and between Green's Harbour river and the sea, viz. the beach from the South river's mouth to Green's Harbour river's mouth, to be given to that neighbourhood of the town from Duxbury-ward on the south side the South river to the mouth of Green's Harbour river where it falls into the sea, and that it shall not be lawful for any other of this town or elsewhere to common there, nor for any within the present list to inclose any part thereof without special leave of the rest, nor any division thereof to be made amongst the present inhabitants, but to belong to the neighbourhood, as well such as may arise and shall hereafter, as those that are now raised upon the same." In January 1710 the town voted, " that all the common land in this town be divided among the freeholders thereof, in proportion to each man's real estate as it was rated in the last province tax."

The complainant also showed, that he had for more than fifty years resided within the town of Marshfield, and for more than forty years had owned and occupied a farm adjacent to the beach, which farm had before been owned by his father, Anthony Thomas, who also owned other lands ; that on the decease of Anthony, a division deed, dated March 19, 1787, was executed by his heirs at law, by which this farm was assigned to the complainant, " also all the privilege of the beach adjoining said land." It was admitted that Anthony owned all the Kent farm, so called, with its privileges and appurtenances, which formerly belonged to John Kent, and which is the complainant's farm before mentioned ; and the deed of the farm, bounded east by the beach, from Isaac Little to Kent, dated in 1709, and the deed from Ralph Powell and wife to Little, dated in 1687, were in the case. This last mentioned deed conveys the farm and " one right of common in the undivided land in Marshfield."

The complainant proved, that time out of mind there had been no fence between his farm and the beach, and that the pasture in which he usually depastured his cattle, horses and sheep, adjoined the beach, and that they fed at pleasure on the beach and were occasionally seen on all parts of it from Hewitt's island to South river, which is more than half the length of the beach. The beach is about four miles long.

It was also proved, that the owners (except the complainant) of the marshes and improved upland adjacent to the beach, had always fenced them from the beach.

On the part of the respondents it was contended, that the property and title of the beach were in the commonwealth, and had never been alienated, and were reserved for the protection of navigation and of the marshes. It was admitted that the depasturing of the beach was injurious to it as a barrier to the marshes and rivers. And it was also contended, that the commonwealth had reserved the control of the beach ; and had passed the statute of 1826, *c.* 81, for its preservation ; and that the use which had been made of it, was consistent with the continuance of the entire title in the commonwealth.

It was admitted, that the passing of the statute was evidence that the prohibitions therein contained were necessary for the protection and preservation of the beach.

It was also contended by the respondents, that the same construction should be given, as if the fee of the beach were in the commonwealth, in case the Court should be of opinion that the fee was in the town of Marshfield.

The witnesses on the part of the respondents proved, that the beach was a place of common resort for fishermen, fowlers and haymakers coming from all parts of Marshfield and the adjacent towns and other places, who time out of mind had been used to turn out their horses on the beach for depasturing, fishermen one or two days at a time throughout the fishing season, haymakers in the haying season, and fowlers at all times of the year. A fish-house had always been on the beach near Brant rock, in which fishermen stayed at times over night ; and sometimes they dried their fish on the beach. Horses had not usually been turned out on that part of the beach mentioned in the complaint, though one or two instances of it were proved ; but they were turned out on the beach at Brant rock, and often fed on the whole beach northerly therefrom, and sometimes came quite up into the complainant's pasture.

There never has been any enclosure to prevent cattle from passing from Brant rock to South river, on the beach. In the year 1692 a highway was laid out the whole extent of the beach from Green's Harbour river to South river, and no damages were awarded to any person. In the location it appears, that a highway was laid out from the beach through the farm above mentioned, to the county road. It was admitted that for more than sixty years last past the owners of the farm had kept a gate across this way, near the dwellinghouse. There is no water on the beach for cattle.

There was no evidence of any cattle having been depastured on the beach, except sheep, neat cattle and horses, and it was proved that they were on the beach chiefly in the months of April and May, and seldom in the latter part of the season, and that the herbage of the beach was peculiar for its early growth and sweetness when young and tender.

Upon the foregoing facts the parties agreed, that if the Court should be of opinion that a verdict ought to be ruled for the complainant, and that he had alleged and shown such a legal title to the beach, or any part thereof, as is contemplated by the statute, a jury should be awarded and the case remitted to the Court of Common Pleas ; if otherwise, that the plaintiff should take nothing by his complaint.

*Beal,* (with whom was *Wood,*) for the complainant. The complainant claims a prescriptive right of commonage in the beach ; he of course admits the fee to be in another.

The respondents may assert that the fee is in the commonwealth, and that prescription does not run against the government. But it will hardly be pretended, that the rights of the commonwealth are better grounded than the prerogative of the crown, in England ; and the authorities show, that at common law, before the *nullum tempus* act, (9 *Geo.* 3,) an individual might claim against the king, either by grant, or by prescription, which presupposes a grant. *Stoughton* v. *Baker,* 4 Mass. R. 528 ; 5 Bac. Abr. (6th edit.) 499, 502, 511, 517, *Prerogative* ; *Storer* v. *Freeman,* 6 Mass. R. 438 ; *Arundell* v. *McCulloch,* 10 Mass. R. 71 ; *Commonwealth* v. *Charlestown,* 1 Pick. 182.

But the fee of the beach is in the town of Marshfield

The important question then is, whether the facts stated are sufficient to establish a prescription ; — which is " an adverse claim and exercise of the right for sixty years." *Gayetty* v. *Bethune,* 14 Mass. R. 52 ; or " *longus usus, nec per vim, nec clam, nec precario* &c." Co. Lit. 114 *a.*

The facts are, 1. That the beach has been depastured by the complainant and those under whom his title is derived, " time out of mind."

2. This use of the beach has been constant, and neither by stealth nor force.

3. It has been adverse ; because 1. It was a damage to the owner of the beach, in the loss of herbage and in the injury to the soil ; and 2. It was under a claim of right ; because the owners of meadow adjoining the beach, fenced against the cattle on the beach, thereby admitting that the cattle were rightfully there ; *Rust* v. *Low,* 6 Mass. R. 90 ;

— because in the division of Thomas's estate in 1787, the heirs assign to the complainant " all the privilege of the beach " ; — and because the deed of Powell and wife to Little conveys the farm and " one right of common in the undivided land in Marshfield." It is a fair presumption that there was a prescriptive right of common appurtenant to the farm in 1687, and by this deed Little acquired a derivative title to the same. *Hull* v. *Horner*, Cowp. 107.

The respondents may contend, that the complainant's enjoyment was not under a claim and existence of a right ; — 1. Because other persons, fishermen &c., made the like use of the beach. But a rightful use of it by them might well stand with our claim ; and a wrongful use by them would not disprove our right. 2. Because a highway was laid out over the beach in 1692, and no damages were claimed by the owner of the farm. We answer, 1. That if the way was laid out by the town, there was no authority to award damages, the fee of the land being in the town. 2. It does not appear whether a new way was laid out, or merely an old one renewed. 3. The way does not go where grass grows, and so is not injurious to any one. 4. It is not necessary to show our right existed in 1692 ; it is sufficient if we go back sixty years. And 5. A common may exist with a highway over it.

They may farther say, that the beach is essential to the security of marshes, rivers, and navigation ; that depasturing it injures it for those purposes, and so is a nuisance ; and that one cannot prescribe for a nuisance. But 1. The depasturing, though remotely injurious to navigation &c., is not such a nuisance as would sustain an indictment. A bridge across navigable water may be a nuisance, but still it may be prescribed for. *Arundell* v. *M'Culloch*, 10 Mass. R. 71. And 2. If the town owned the fee, they might take the herbage by the mouths of their own cattle, and consequently it might be taken under a grant or presumed grant.

It may be said that the complainant's enjoyment was under the town grant of 1645. But this Court have adjudged that grant to be void ; *Thomas* v. *Marshfield*, 10 Pick. 364 ; and the law will not presume a possession to be tortious, except

21 *

from necessity. Nor is there any evidence in this case, that the complainant ever knew of that grant, until after the enactment of the statute of 1826, *c.* 81. His referring to it since, could not impair his legal rights. *Ricard* v. *Williams*, 7 Wheaton, 59 ; Co. Lit. 114 *b* ; *Jackson* v. *Cary*, 16 Johns R. 305.

A right of commonage is protected by the *St.* 1826, *c.* 81, and the question of damages is to be determined by a sheriff's jury. *St.* 1786, *c.* 67 ; *Ellis* v. *Welch*, 6 Mass. R. 251.

*W. Baylies* and *Eddy*, for the respondents. The statute of 1826, *c.* 81, gives a remedy only to the owner of land which is injured in consequence of proceedings under the statute. The complainant does not claim the soil of the beach, but only an easement.

The fee of the beach was in the commonwealth. 2 Bl. Com. 51 ; 3 Kent's Com. 308, 346 ; *Bagott* v. *Orr*, 2 Bos. & Pul. 472 ; *Vattel*, *bk.* 1, *c.* 23, § 290 ; Justin. Inst. 2. 1. 4. It was not granted to the town by the ordinance of 1685. *Palmer* v. *Hicks*, 6 Johns. R. 133 ; *Arnold* v. *Mundy*, 1 Halsted, 90 ; *The case of Mines*, Plowd. 310, 336 ; *Royal Fishery of the Banne*, Davies, 149 ; 17 Viner, 154, *Prerogative*, *O, c*, 2.

If the fee of the beach is in the commonwealth, no prescription can run to destroy or impair the public property in it. *Stoughton* v. *Baker*, 4 Mass. R. 528 ; *Nickerson* v. *Brackett*, 10 Mass. R. 217 ; *Arundell* v. *M‘Culloch*, ibid. 70 ; *United States* v. *Kirkpatrick*, 9 Wheat. 735 ; Com. Dig. *Præscription*, *F* 1, *F* 2 ; Com. Dig. *Prærogative*, *D* 86 ; *Sheffield* v. *Ratcliffe*, Hob. 346 ; Co. Lit. 41 *b* ; *Green's case*, 6 Co. 30 ; *Rex* v. *Cross*, 3 Campb. 226 ; 2 Bac. Abr. 233, *Customs*, *B* ; *Ward* v. *Bartholomew*, 6 Pick. 415 ; *Jackson* v. *Winslow*, 2 Johns. R. 83 ; *Vooght* v. *Winch*, 2 Barn. & Ald. 662 ; *Weld* v. *Hornby*, 7 East, 195 ; *Carter* v. *Murcot*, 4 Burr. 2162 ; Mathews on Presumption, 17 ; *Nottingham* v. *Lambert*, Willes, 111.

The use made of the beach proves that the complainant had no right in it different from that enjoyed by the public at large ; and what is common to all cannot be prescribed for. *Coolidge* v. *Learned*, 8 Pick. 504 ; *Fitch* v. *Rawling*,

2 H. Bl. 393 ; *Ward* v. *Creswell*, Willes, 265 ; 2 Dane's Abr. 690 ; *Peck* v. *Lockwood*, 5 Day, 22.

Supposing the beach to be a waste, and that the complainant's cattle strayed into it from his own pasture, he would have but a commonage *per cause de vicinage* ; which gives no right, the enjoyment being by permission. *Dawson* v. *Duke of Norfolk*, 1 Price, 246 ; 2 Dane's Abr. 609 ; Co. Lit. 122 ; *First Parish in Gloucester* v. *Beach*, 2 Pick. 60, note ; *First Parish in Medford* v. *Pratt*, 4 Pick. 222 ; *Emerson* v. *Wiley*, 7 Pick. 70 ; *Sargent* v. *Ballard*, 9 Pick. 251 ; 3 Dane's Abr. 252 ; Mathews on Presumption, 315.

WILDE J. delivered the opinion of the Court. This process is founded on the statute of 1826, c. 81, for the preservation of Marshfield beach and the marshes adjoining, against the encroachments of the sea, and which provides that no neat cattle, horses or sheep shall be allowed to go at large on the beach, and further provides that every person having any legal title to the beach or any part thereof, shall be compensated by the town of Marshfield for any injury he may sustain under the provisions of the statute. The complaint alleges, that at the time of passing the act, the complainant was seised in fee of a farm adjoining the beach, and that he had, as appurtenant to the farm, from the time whereof the memory of man is not to the contrary, a right of commonage on a part of the beach for all such neat cattle, horses and sheep as were levant and couchant upon the farm. At the trial the complainant proved that he had occupied the farm, which descended to him from his father, it being assigned to him in the division of his father's estate, and that time out of mind there had been no fence between the complainant's farm and the beach ; and that the pasture in which he usually depastured his cattle &c., adjoined the beach, and that his cattle &c. fed at pleasure on the beach and were occasionally seen on all parts of it from Hewitt's island to South river, which is more than half the length of the beach.

It was proved on the part of the respondents, that in the year 1692 a highway was laid out the whole extent of the beach from Green's Harbour river to South river and from the beach through the complainant's farm to the county

Thomas
*v.*
Marshfield.

road, and that for more than sixty years last past the owners of the farm had kept a gate across such way leading to such county road near the complainant's dwellinghouse.

It was also proved, that the beach was a place of common resort for fishermen, fowlers and haymakers, coming from all parts of Marshfield and the adjacent towns, who time out of mind had been used to turn out their horses on the beach for depasturing, the fishermen and haymakers at the fishing and haying seasons, and the fowlers at all times of the year.

The principal question is, whether the complainant, on these facts, has made out a good title by prescription to any part of the beach, within the true meaning of the statute. To make a good title by prescription, a party must show that the privilege prescribed for has been possessed and enjoyed for a term beyond legal memory, which by our law is limited to forty years, as was lately decided in the case of *Melvin* v. *Whiting*; and in this respect no objection can be made to the complainant's title, if the possession or enjoyment has been such as the law requires, to uphold a title by prescription. Lord Coke remarks that such a possession must have three qualities; it must be long, continual, and peaceable; and he afterwards adds, citing Bracton, *longus usus, nec per vim, nec clam, nec precario.* As a title by prescription is founded on the presumption of a grant, the possession must be such as to render such a presumption reasonable. It must, therefore, be adverse or under a claim of right, and not by the voluntary permission of the owner of the land. So if any thing appears to show that the possession commenced in wrong, that will rebut the presumption of a grant and defeat the title by prescription. Rights of common, says Mathews, in his treatise on presumptions, *p.* 315, cannot be sustained where it appears that the enjoyment was plainly an act of encroachment and arose either *pur cause de vicinage,* or in consequence of the boundaries of two contiguous farms being ill defined. "This," says Blackstone, "is indeed only a permissive right, intended to excuse what in strictness is a trespass in both, and to prevent a multiplicity of suits; and therefore either party may enclose and bar out the other." 2 Bl. Com. 33.

The same doctrine is laid down by Lord Coke. In common *pur cause de vicinage,* " no man can put his beasts therein, but they must escape thither of themselves by reason of vicinity ; in which case one may inclose against the other, though it hath been so used time out of mind, for that it is but an excuse for trespass." Co. Lit. 122 *a.*

So no one will acquire a title by prescription by pasturing his cattle on an open common, training field or highway ; for these being kept open for public use, no one by using them can raise any presumption of a particular grant in his favor ; no one can prescribe for a privilege which is common to every one. *First Parish in Gloucester* v. *Beach,* 2 Pick. 60, note.

In applying these principles to the facts proved, admitted and reported, we find it quite impossible to maintain any title in the complainant by prescription. Whether the fee in the beach remains in the commonwealth, or vested by the ancient grant in the town of Marshfield, it was left open for the public use and convenience as a highway, common and landing place, and has been so used for more than a century. Here was a highway laid out the whole extent of the beach, and from thence to the county road. The erection of a gate across the way near the county road did not essentially obstruct the use of it by the public. Such erections were not unfrequent in the early settlement of the country, and are in many instances kept up to the present day even across county roads leading through meadows. They are erected for the convenience of the owners of the meadows, and after a long continuance they are presumed to have been erected with the consent of the town, or to have been authorized by the Court of Sessions. The way still remained a public way, and the beach was used as such, and as a common, by every one having occasion to use it, — by fishermen, fowlers, and haymakers, who turned out their horses upon it to feed ; and although the complainant may have been more accommodated than others, there is nothing in the case to show that he has any better right, or that he has acquired any title whatever in the beach

Thomas
*v.*
Marshfield.

It is also equally clear, that if the beach was not laid out as a highway or common, but remained as a mere waste, the complainant's title must nevertheless fail. He acquired no right of common except *pur cause de vicinage*, which gives no right or title to the land ; it only operates as an excuse for trespass. If the complainant obtained any title to the beach by erecting and keeping up a fence or gate near the county road, it would be a title by disseisin ; a title which the complainant does not attempt to maintain, and for which there is no pretence. Where one not claiming any right or title to land enters on it, he acquires no seisin but by the ouster of him who was seised ; and to constitute an ouster of him who was seised, the disseisor must have the actual exclusive occupation of the land, claiming to hold it against him who was seised, or he must actually turn him out of possession. *Kennebeck Purchase* v. *Springer*, 4 Mass. R. 418. The complainant has never made any such claim, nor has he had exclusive possession, and the title he sets up admits that he has no such claim or title. He claims a right of commonage only in the beach, and upon the facts reported, we think it very clear that a jury would not be authorized to presume a grant of such a privilege.

The complainant having thus failed to show title to any part of the beach, the judgment of the Court is, that he take nothing by his complaint.