## Thacher Magoun *versus* Samuel Lapham.

Where the line of a lot, mentioned in a deed of conveyance as a boundary of the land conveyed, was not ascertained and known by the parties, and a plan of the land had been taken, which is referred to in the deed as containing a particular description of the land intended to be conveyed, and the description on the plan is clear and unambiguous, referring to monuments, courses and distances which can be ascertained with perfect certainty, and is inconsistent with the boundary line referred to, such particular description will control the words of general description, and the reference to such supposed boundary line will be rejected.

A mixed possession of land under a deed from a grantor having no title, does not give the grantee a seisin as against one claiming by virtue of a like possession.

Writ of entry, dated May 7, 1836, in which the demandant complains that he was disseised by the tenant of 50 rods of land in Medford, bounded as follows : " Beginning on the south side of Ship street by land formerly of Calvin Turner ; thence the line runs southerly by said land, formerly of said Turner, and by or near an old wharf, to Mystic river ; thence northerly and easterly by a fence now standing, about three rods and a half, to said Ship street ; thence westerly by said street to the point of beginning aforesaid, measuring about fifteen rods and a half." The tenant pleaded nul disseisin.

At the trial, before *Morton* J., the demandant gave in evidence a deed from Mary Skillings and Ann S. Fowle to George B. Lapham, dated September 27, 1814, and the plan referred to in that deed ; also a deed from G. B. Lapham to the demandant, dated December 20, 1822.

The deed of Skillings and Fowle conveys a parcel of land, bounded " easterly by land of Mr. Magoun, northerly by the road, westerly by land of Calvin Turner, southerly by land of John Cutter and by Mystic river, containing by estimation one acre, three quarters and four poles : for a more 'particular description of boundaries reference may be had to a plan taken March 31st, 1812, by Peter Tufts junior, surveyor." The plan referred to excludes from the deed the parcel demanded in this action.

The deed from G. B. Lapham conveys to the demandant a parcel corresponding with the one designated on the plan ; also all Lapham's right, title and interest in a strip of land lying at the northwesterly corner of the other parcel, between the river

and the road, and bounded northwesterly on land formerly of Calvin Turner, and described as part of the same premises bought by G. B. Lapham of Skillings and Fowle.

To prove his possession the demandant introduced the following witnesses : —

Nathan Adams, who testified that he prepared the deed from G. B. Lapham to the demandant, and knew that Turner held a piece of land, but did not learn his boundary line ; and that the strip of land in question was never enclosed : —

Calvin Turner, who testified that he owned his shipyard about thirty-five years, terminating about eighteen years ago, and for some time after G. B. Lapham had purchased of Skillings and Fowle ; that G. B. Lapham, after his purchase, built a cross fence at the westerly end of his lot as described on the plan, and that the posts are there now ; that the witness thought his line was 30 or 40 rods from the cross fence ; that he used this bank (the land in dispute) as much as anybody else ; that G. B. Lapham never used it more than any other person ; that it was occupied by all the town's people ; that the witness hauled out his timber upon and over it, and laid his timber upon it, and at one time occupied a great part of it for that purpose and for hewing timber ; and that there was a common landing-place there. Upon cross-examination he stated, that he generally occupied pretty near to the cross fence, say within 20 or 30 feet of it, where the landing was ; that no one ever molested him ; that G. B. Lapham once claimed the right to carry the fence up to the witness's ship-yard, but that the witness told him he must keep back at the cross fence ; that the witness never knew him to use the land in dispute.

Other witnesses testified to acts of ownership done by the demandant, and to the use made of the land by other persons.

The tenant, objecting that the demandant had not made out a case, proceeded, on the suggestion of the court, to state the defence and put in his evidence.

A nonsuit was entered by consent, subject to the opinion of the Court.

*Farley* and *A. Bartlett*, for the demandant, cited *Pray* v. *Pierce*, 7 Mass. R. 381 ; *Milton* v. *First Parish in Milton*,

10 Pick. 447 ; *Higbee* v. *Rice*, 5 Mass. R. 344 ; *Newhall* v. *Hopkins*, 6 Mass. R. 353.

C. G. *Loring* and *A. W. Austin*, for the tenant, cited as to the construction of the deeds put into the case by the demandant, *Croade* v. *Ingraham*, 13 Pick. 35 ; *Comstock* v. *Smith*, 13 Pick. 120 ; *Lithgow* v. *Kavenagh*, 9 Mass. R. 161 ; *Leland* v. *Stone*, 10 Mass. R. 459 ; *Fowle* v. *Bigelow*, 10 Mass. R. 379 ; *Tyler* v. *Hammond*, 11 Pick. 193 ; *Russell* v. *Coffin*, 8 Pick. 153.

WILDE J. delivered the opinion of the Court. This case is brought before us by parties, neither of whom, according to the evidence reported, appears to have any valid title to the land demanded. Their claims, nevertheless, such as they are, must be examined, and if it can be ascertained that either party has the better title, he will be entitled to judgment.

The demandant's title, if he has any excepting the claim arising from his own possession, is derived from the deed of Mary Skillings and Ann S. Fowle, to George B. Lapham ; the land thereby conveyed having been afterwards conveyed to the demandant. The question is, whether by that deed any part of the demanded premises was conveyed to Lapham. The land conveyed was described as situated in Medford, and was bounded " easterly by land of Mr. Magoun, northerly by the road, westerly by land of Calvin Turner, southerly by land of John Cutter and by Mystic river, containing by estimation one acre, three quarters, and four poles."

This description, if nothing further had been added, would probably have included the whole or a part of the land demanded, provided Turner's line was as far westerly, or nearly so, as it is supposed to have been. But to this general description it is added, that " for a more particular description of boundaries, reference may be had to a plan taken March 31st, 1812, by Peter Tufts junior, surveyor." This reference is important, and was intended, undoubtedly, to correct any inaccuracies, if any there were, in the general description. And the lines laid down on this plan and the courses, distances, references to monuments, and other particulars appearing thereon, are to be as much regarded as the true description of the

*Magoun v. Lapham.*

*Oct. 20th*

<div style="margin-left:2em">

Magoun
*v.*
Lapham.

</div>

land conveyed, as they would be if expressly recited in the deed. *Lunt* v. *Holland*, 14 Mass. R. 149.

Now it appears very clearly by the plan referred to, that 't includes no part of the demanded premises. It ascertains with great certainty the land intended to be conveyed, although it does not agree with that part of the general description which refers to Turner's line as it is supposed to be. But that line has never been fixed; and could not have been ascertained by the parties to this conveyance. They no doubt supposed that it extended easterly to the land surveyed. This was probably a mistake, but however that may be, the particular description must be regarded as the most certain indication of the intention of the parties. Generally when land conveyed is described as adjoining other lots, the lines of those lots will be held to limit the extent of the conveyance. But where it appears, as it does in the present case, that the line of a lot referred to in a conveyance, as descriptive of the land conveyed, was not ascertained and known by the parties, and the land granted had been surveyed, and a plan taken, which was referred to in the conveyance, as containing a particular description of the land intended to be conveyed, and the description on the plan appears to be clear and unambiguous, referring to monuments, courses and distances, which can be ascertained with perfect certainty; such a particular description will control any words of general description, not agreeing with the particular description, and the reference to the line of a lot supposed to adjoin will be rejected as founded in mistake.

This therefore is as strong if not a stronger case than that of *Davis* v. *Rainsford*, 17 Mass. R. 207, in which it was laid down, as an exception to the general rule as to the controlling effect of monuments referred to in the description of lands conveyed, "that if in taking the whole description together, it be more reasonable to suppose a mistake was made as to the monuments referred to, than to suppose a mistake in the admeasurement of the distances where they disagree, the admeasurement will 'govern in fixing the boundaries, in preference to the monuments.

The same rule of construction was adopted in *Frost* v *Spaulding*, decided at April term 1838 in Middlesex, a case

very similar to the present, in which a mistake was evidently made in referring to one of the lines of a lot supposed to adjoin the land conveyed, but which actually did not.

It appears therefore very clear, that no part of the land demanded was included in the deed from Skillings and Fowle to Lapham. And the same land conveyed to him by that deed, he afterwards conveyed to the demandant, describing it precisely as it was described on the plan. He also by the same deed sold all his right, title and interest to a strip of land lying at the northwesterly corner of the first described lot, between the river and the road and bounded northwesterly on land formerly of Calvin Turner, the same being described as part of the same premises he bought of Mary Skillings and Ann S. Fowle.

To this latter tract of land it has been shown that Lapham, the grantor, had no title, and as to that tract no title passed by the deed. He had no right, title or interest, and consequently could convey none. He was not even seised of it by right or by wrong. Turner testifies, that after Lapham purchased of Skillings and Fowle, he built a cross fence at the westerly end of his lot as described on the plan; that he once claimed the right to carry this fence up to his (Turner's) yard; but that he told him he must keep back to the cross fence; and that he never knew him use the premises in dispute.

The only question that remains is, whether the demandant, since his purchase from George B. Lapham, has acquired any title by possession. It has been argued that he entered under color of title, and that, although no title to the demanded premises passed by Lapham's deed, yet it was good to show the extent of the demandant's claim. It is true, as the rule is laid down in *Proprietors of the Kennebec Purchase* v. *Springer*, 4 Mass. R. 418, that when a man enters on land, claiming a right or title to the same, and acquires a seisin by his entry, his seisin shall extend to the whole parcel, to which he has right. But the question in this case is not as to the extent of the demandant's claim or right, but whether he has acquired a seisin of any part of the demanded premises, and we think clearly, according to the evidence, that he has not. A more loose and unfounded title by possession or disseisin can hardly

Magoun
v.
Lapham

be imagined. The demandant has had no exclusive posses· sion, nor has he claimed any. His possession, if he has had any, was a mixed possession and gave him no seisin. Turner and those claiming under him, have occupied the premises as a place of deposit or landing, from time to time as they chose, and without interruption. Their title by possession would seem to be supported by stronger evidence than that offered by the demandant. But we think that neither party, by such a mixed possession, has acquired any seisin. In such case the maxim applies, *potior est conditio possidentis.*

The writ admits the tenant's possession, and the demandant has shown no sufficient right of possession to disturb it.

*Demandant nonsuit.*