CHARLES STEARNS *vs.* EDMUND PALMER & others.

In 1785, W., by a deed of bargain and sale, conveyed to A., B. and C. a tract of land
formerly belonging to the town of S., bounded westerly on Connecticut River, " in
trust for the use of the inhabitants of the first parish in S., for a burying ground for-
ever; to have and to hold the said land to them, the said A., B. and C., in trust for
the use of the inhabitants of said parish, and their heirs forever, for a burying ground ; "
and W., in said deed, covenanted to " warrant, secure and defend the said land unto
them, the said A., B. and C., in trust as aforesaid, for the use of the inhabitants of said
first parish, and their heirs forever, as a burying yard, as aforesaid : "   Long before said
conveyance, a part of said tract had been set apart and appropriated, by the town of
S., as a burying ground, and had been used as such while said town and parish were
identical, and after the separate organization of the parish :   About the time of said
conveyance, the parish made provision for fencing the burying ground, and erected,
about the year 1800, a fence on the top of the bank of the river :   That part of said
tract which constituted the shore and bank of the river was unsuitable for a burial place,
and was never used as such ; and in 1842 the parish conveyed it to A.:   B. afterwards
broke and entered the close so conveyed to A.:   A brought an action of trespass
against B., who defended under a license from the town of S.   *Held,* that the deed
of W. conveyed a fee simple estate ; that if the inhabitants of the parish had not the
legal estate, but only the equitable estate, (which was not decided,) yet, as they were
in possession, they could hold against all persons not claiming under A., B. and C. ;
and, as they entered and claimed title under said deed, they acquired a seizin of all
the land therein described ; and that A., their grantee, could well maintain his action.

TRESPASS for breaking and entering the plaintiff's close.
The defendants, in their specification of defence, alleged that

the title to the *locus in quo* was in the inhabitants of the town of Springfield, and that their entry thereon was under a license from ·said inhabitants.

At the trial in the court of common pleas, before *Merrick*, J. the plaintiff introduced *the same evidence* as in the next preceding case of *Stearns* v. *Woodbury*, (*ante*, 27,) and the judge made the same rulings upon the questions raised, as stated in the bill of exceptions in that case.    The plaintiff also offered in evidence the following deed, dated and recorded January 12th 1785 :   " Know all men, that I, Aaron Warriner of Springfield, for and in consideration of thirteen pounds and ten shillings to me in hand paid, before the ensealing hereof, by Moses Bliss, Zenas Parsons and Ariel Collins, all of Springfield, the receipt whereof I do hereby acknowledge, have given, granted, bargained and sold unto them, the said Moses, Zenas and Ariel, in trust to and for the use of the inhabitants of the first parish in Springfield, for a burying ground forever, a certain piece of land lying in Springfield aforesaid, at the rear end of my home lot, containing about half an acre, and described as follows, viz. beginning at the monument of the late Rev. Mr. Glover, at the westerly end, and extending easterly the whole width of my said lot, nine rods, or to the fence that goes across said lot, bounding northerly upon land of Moses Church, easterly upon my own land, southerly and westerly upon the burying ground ; being the whole of my right in said land, from the said cross fence to the river.    To have and to hold the said land and premises to them, the said Moses, Zenas and Ariel, in trust to and for the use of the inhabitants of said first parish, and their heirs forever, for a burying yard.    And I, the said Aaron Warriner, for myself, my heirs, executors and administrators, do covenant, promise and engage the before granted land and premises unto the said Moses Bliss, Zenas Parsons and Ariel Collins, in trust to and for the use of the inhabitants of said parish, and their heirs forever, that before the ensealing hereof, I am the true, sole, proper and lawful owner and possessor thereof, and have good right to sell the same as aforesaid, and that I will warrant,

secure and defend the said land, with its appurtenances, unto them, the said Moses, Zenas and Ariel, in trust as aforesaid, to and for the use of the inhabitants of said first parish and their heirs forever, as a burying yard, as aforesaid." (The land described in this deed was not the same which was in question in the next preceding case, but was *the North Bury-ing Ground.*)

The judge ruled, that though the *locus in quo* was included in the description in said deed, no title thereto was conveyed by said deed to said first parish. A verdict was returned for the defendants, and the plaintiff alleged exceptions to said rulings.

*Davis & H. Morris,* for the plaintiff.

*R. A. Chapman & Ashmun,* for the defendants.

WILDE, J. This case differs materially from that of *Stearns* v. *Woodbury,* (*ante,* 27,) decided at the present term. In that case, the plaintiff failed to prove any valid title to the *locus in quo,* either by possession or otherwise. In this case, he offered to give in evidence a deed from Aaron Warriner to Moses Bliss and others, by which a certain piece of land, including the *locus in quo,* was conveyed to them in trust, to and for the use of the inhabitants of the first parish in Springfield, and their heirs forever, for a burying yard. The plaintiff's title is derived by deed from the said parish, dated May 20th 1842. This evidence was rejected by the court at the trial, on the ground, that although the *locus* was included in the description in the deed, no legal title was conveyed by said deed to said parish.

In support of this ruling of the court, several objections have been made to the plaintiff's title. In the first place, it is objected, that the legal estate was vested in the trustees, and that the parish, if they had any estate in the premises as a corporation, had only an equitable estate. But the plaintiff's counsel contend that the legal estate vested in the parish, by virtue of *St.* 27 Hen. 8, *c.* 10, called the statute of uses. The argument is, that a mere nominal or formal trust was created by this conveyance, but that, substantially, it

was a deed to uses.    Trusts, and uses, and confidences are all within the words of the statute.    Lord Bacon says that, " where the trust is not special nor transitory, but general and permanent, there it is a use."   In the present case, the consideration appears to have been paid by the immediate grantees, and this is sufficient to raise a use to them, which the statute of uses would execute in them.    The objection, therefore, to the argument is, that upon this construction of the deed, the legal estate would be vested in the immediate grantees, and no use could be limited over to the parish, this being a deed of bargain and sale ; and it is a well settled rule of law, that by such a conveyance a use cannot be limited upon a use.    Whether, to avoid this technical objection, and to carry into effect the intention of the parties to the conveyance, this deed might not be construed as a feoffment or release, is a question we have not found it necessary to decide ; as we are clearly of opinion that, admitting the legal estate was in the immediate grantees, and that the parish had only an equitable estate, yet being in possession of the land, and having conveyed it to the plaintiff, he may well maintain this action.    No person can set up the legal estate against the equitable estate, but the trustees or some person claiming under them, as was decided in *Newhall* v. *Wheeler*, 7 Mass. 189.    Formerly it was held that a mere trust estate could not be set up by a trustee against the *cestui que trust*, in a clear case, even in an action at law.    Cowp. 46.    2 Doug. 721.    It is now, however, well settled, that the legal estate must prevail at law, unless the trustees should be enjoined by a court of equity.    Lewin on Trusts, 482.    But it is very clear that no one, not claiming under a trustee, can set up his estate against the equitable estate of the *cestui que trust*.

Another objection to the plaintiff's title is, that the trustees took only a life estate by the conveyance.    But this grant was in trust " for the use of the inhabitants of the first parish in Springfield, and their heirs forever, for a burying yard." And it is a well settled principle, that as the immediate grantees took the legal estate in trust, it must be commensurate to

the trust. 7 Mass. *ubi sup.* No form of words is requisite to create a trust. A trustee, or *cestui que trust,* will take a fee without the word "heirs," when a less estate will not be sufficient to satisfy the purposes of the trust. *Oates* v. *Cooke,* 3 Bur. 1684. *Fisher* v. *Fields,* 10 Johns. 505. *Welch* v. *Allen,* 21 Wend. 147. But the words "their heirs," in the deed in question, may be construed as applying to the immediate grantees, and ought to be so construed, if necessary to effectuate the clear intention of the parties. And there can be no doubt that the intention was to convey an estate in fee simple.

The remaining objection to the plaintiff's title is, that the trust created by the conveyance from Warriner was for the use of the individual inhabitants of the parish, and not for the use of the parish in their corporate capacity. But such a construction would be manifestly inconsistent with the purpose for which the conveyance was made, as it would limit the use to the inhabitants of the parish for the time being, and would exclude from the benefit of the trust all inhabitants of the parish who should become such subsequently to the conveyance, which certainly never could have been the object of the trust. And such was not the construction contended for by any of the inhabitants of the parish, previously to the present controversy. There was evidence at the trial, tending to show that, more than sixty years before, the parish had made provision for fencing the burying ground, and that, more than forty years before, the parish had built a fence on the top of the bank, and then enclosed the burying yard. The parish, therefore, have had the undisturbed possession of the burying yard for more than forty years, and probably ever since the conveyance from Warriner. And this possession is to be considered as extending to all the land conveyed by the deed of trust for the use of the parish ; it being a well settled principle, that when one enters on land, claiming title to the same under a deed of conveyance, and thereby acquires a seizin, it shall extend to the whole parcel to which he has right. *Proprietors of Kenrebeck Purchase* v.

*Springer,* 4 Mass. 418. And this is a strong case to show the reasonableness of the principle. The parish enclosed the whole burying yard, so far as it could be used, and built their fence as nearly to the river as it could be done ; and undoubtedly they thereby acquired an actual or constructive possession of the whole tract of land conveyed by the deed under which they entered.

How, and from whom, Warriner derived his title, does not appear ; and it is not necessary that it should appear. Every presumption is to be made in support of such an ancient grant, followed by such a long and undisturbed possession. Few titles can be traced back to the first settlement of the country.

*New trial in this court*