21   97
85   344

SHUBAEL MARSH v. REUBEN L. WEIR AND ANOTHER.

It has never been held necessary that the consent of the Federal Executive of Mexico, should appear on the face of the title of a colonist, to land granted under a contract to colonize within the border or coast leagues. The contrary has been repeatedly decided. It is sufficient that the consent was given to the contract to colonize the territory comprizing the grant.

The mode of constituting a family, adopted in this instance (by associating two or more single men) for the purpose of making a grant under Austin's first contract, has been heretofore recognized, and the grant held valid.

Where several single men were associated as a family, and a grant of a league of land was made to one of them as the head of a family, (a practice adopted under Austin's first contract,) by whom their proper proportions were conveyed to his associates, the latter took as colonists ; the conveyances to them were not subject to the provision in restraint of alienation ; and it would seem that each one was bound to perform the conditions annexed to headrights, by the law under which the grant was made.

Marsh v. Weir.

Where a league of land was granted to A, ostensibly as the head of a family, but really for himself, as a single man, and in trust for B, to whom he conveyed his part; and the Ayuntamiento declared B's land vacant, because of his abandonment of the country; there was nothing in the relation of A to B, that would prevent the former from receiving for his own benefit, a grant of the same land, as an augmentation.

The fact of abandonment (of the country,) and of the consequent forfeiture, is conclusively established by the judgment of a competent tribunal, (the Ayuntamiento.) It is no objection to the validity of the judgment, that the grantee was not served with notice. He had gone beyond the reach of process; and moreover the proceeding was *in rem,* and acted directly upon the *status* of the thing.

Quere, where the concession of an augmentation to a colonist of Austin's first colony, directed the Alcalde of the Municipality to extend the title, whether the Commissioner of Austin's contract for the colonization of the litoral leagues (within which the land lay) could lawfully extend the title.

" Color of title," defined in our Statute of Limitations, to be " a consecutive chain of transfer from or under the sovereignty of the soil, down to him, her or them in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty," is very different from that which has been given by Courts, to these terms; that is, " that which in appearance is title, but which in reality is no title;" and the Statute having defined the terms, we must look to the Statute for their meaning.

Where the Ayuntamiento recalled the title and declared land vacant, on the ground of abandonment of the country by the grantee, or of his failure to perform the conditions of the grant, such grant cannot go to constitute color of title, as defined in our Statute of Limitations.

Appeal from Brazoria. Tried below before the Hon. Joseph C. Megginson.

Trespass to try title, by Shubael Marsh against Reuben L. Weir, to the half of a league of land originally granted to said Marsh in 1824; commenced February 27th, 1847. Joseph M. McCormick, who was the landlord of Weir, became a party defendant. Defendants pleaded not guilty; claimed title to the lower quarter of said league, by sale and conveyance, in 1824, from said Marsh to John McCormick, of whom defendant Joseph M. McCormick was sole heir; adverse possession under title and color of title for three years before the institu-

tion of this suit ; adverse possession, paying taxes thereon, under deeds duly registered for five years next before the institution of this suit.  Plaintiff replied that John McCormick abandoned the country in 1825, and never returned to it ; that his pretended title to the land was forfeited by such abandonment, and so declared by the practical authorities of the country ; and the land afterwards granted to plaintiff.  And for further reply, plaintiff alleged that he never received any consideration from John McCormick for said pretended sale ; and that if said McCormick ever had title to said land, the same was acquired by him as a colonist.

At the trial in 1852, the plaintiff gave in evidence a grant dated July 8th, 1824, made by the Baron de Bastrop as Commissioner of Austin's first colony, to him, Shubael Marsh, as a colonist, and head of a family, for a league of land within the litoral leagues.  Austin's first colonial contract was made with the Executive Government of Mexico.

The defendants read in evidence a deed of sale, from Marsh to John McCormick, dated December 28th, 1824, of the lower quarter of said league, purporting to be in consideration of forty-one dollars and two reals paid to said Marsh.  Defendants then read admissions of plaintiff, to the effect that Joseph M. McCormick, one of the defendants, was the heir at law of John McCormick ; that said John McCormick died previous to the year 1840 ; that R. L. Weir, one of the defendants, is in possession of said lower quarter league, as the tenant of said Joseph M. McCormick, cultivating a portion thereof. The defendants then proved that Weir went on the land in controversy, and commenced his improvement on the same between the 15th and last of September, 1842 ; built a log cabin fifteen or sixteen feet square, with a shed room to it, and cow pens ; moved thereto in October, 1842 ; and in the Winter after, enclosed a small field.

The plaintiff read in evidence Austin's contract for the colo-

nization of the littoral leagues, in 1828, showing the assent of the Federal Government thereto.

This was all the evidence admitted.    Verdict and judgment for the defendants.    Motion for new trial overruled, &c.

It appeared by bill of exceptions, that the plaintiff offered to prove that the league of land granted to him as the head of a family in 1824, was in fact granted to him for himself and in trust for the said John McCormick, David Shelby and James Frazier ; that there being no authority, (as was said by witness Samuel M. Williams, who had charge of the Land Office in Austin's colony, from its organization in 1824 until the Revolution in 1835,) for granting less than a league, before the law of 1825, Stephen F. Austin, with the approbation of the Commissioner and of the Government, being unwilling to grant leagues to single men without discrimination, adopted the practice of uniting two or three or four in a single grant, sometimes naming them all, and sometimes making the grant to one alone, with the agreement that he should convey the proportions intended, to the others ; that the conveyance from Marsh to McCormick was made in pursuance of such agreement, and that the consideration stated therein was McCormick's proportion of the fees for issuing the title, which were paid in fact to the officers, and not to Marsh ; that McCormick's quarter was declared forfeited because of his abandonment of the country, by the Ayuntamiento in December, 1830 ; in proof of which the record of the proceedings of the Ayuntamiento were offered in evidence ; that said McCormick did in fact abandon the country in 1825 or 1826 ; and that on the 14th of December, 1831, by virtue of an augmentation concession of a half league, from the Governor of Coahuila and Texas, to said Marsh, a title was extended by Commissioner Stephen F. Austin to the said Marsh, for a half league including the quarter forfeited by John McCormick.    All of which testimony was excluded, on the ground that the assent of the Federal Government did not appear upon the face of the aug-

mentation concession of the half league to Marsh, by the Governor of Coahuila and Texas, to sustain which grant the other evidence was offered. The augmentation concession directed the municipal Alcalde of the municipality to which pertained the land which the grantee should select, to put him in possession of it and extend the title, &c.; whereas the possession was given and the title extended by Stephen F. Austin, as Commissioner of his new colony, embracing the littoral leagues.

After the Court excluded the plaintiff's evidence, plaintiff objected to the evidence of the defendants to sustain the pleas of limitation, and offered to let a general verdict go against him; but the objection was overruled and the evidence admitted; plaintiff excepting.

It appeared by a bill of exceptions, that plaintiff objected to the admission of the deed from himself to McCormick, on the ground that it was illegal, being made before the plaintiff had acquired full property in the land.

*R. Hughes*, for appellant. I. The Court will not, with a hypercritical spirit, reverse matters determined by former authorities, or disturb rights founded upon their action or adjudication. (Holliman v. Peebles, 1 Tex. R. 707 ; Hancock v. McKinney, 7 Id. 384 ; Jenkins v. Chambers, 9 Id. 235.)

II. The Ayuntamiento was the proper authority to recall the titles, where the conditions had not been performed. (Holliman v. Peebles, 1 Tex. R. 707 ; Col. L. of 1825, Art. 26.) And in cases of abandonment of the country, as being similar. (Rule 36, 2 Partidas, 1248 ; 1 Febrero Mex. 73 and 4 Av. 2 ; see Yates v. Jams, 10 Tex. R. 175-6.)

III. The 7th Article of the instructions to Commissioners, of the 4th of September, 1827, which directed the Commissioners not to give possession to any colonist, settled or intending to settle, within the border or coast leagues, unless

there was presented to him a special order of the Government, wherein should be manifested the approbation of the National Government, was evidently intended to apply to individual settlers, who were independent of any colony, and could have had no application to colonists admitted within colonies, embracing the littoral or border leagues, and approved by the National Government. Nor is it required in any case, that the assent of the National Government shall appear on the face of the title. (Good v. McQueen, 3 Tex. R. 255 ; Republic v. Thorn, Id. 570.)

IV. It cannot be pretended that the defendants were in possession five years ; and the evidence fails to show a possession of three years by or under McCormick. It does not appear that Weir did not go upon the land as a trespasser, nor when he commenced to hold under McCormick.

But suppose, for the sake of argument, that Weir went into possession under McCormick, and held it adversely, peaceably and uninterruptedly for three years, next before the institution of plaintiff's suit : notwithstanding all this, we contend that plaintiff is not barred of his action ; for the reason that the defendant Weir, though holding the possession, had not title nor color of title ; and though it may be true that the defendant McCormick has à color of title, within the rule presented by the Statute, yet he has not had the possession.

Was Weir in possession under title or color of title ? He could only be so by virtue of the privity existing between him and his co-defendant, his landlord ; which is a privity of estate merely, and not of title ; whereas the Statute requires privity of title ; that the possessor shall be in the chain of transfer (not of the possession merely, but of the full property) from or under the sovereignty of the soil : which cannot be predicated of a tenant. (5 Bac. Ab. 632 ; 2 Thomas' Coke, 403 ; Christy v. Alford, 17 How. R. 601.)

Was McCormick in possession, within the intent of the Statute ? He was not. When the possession of a tenant is

spoken of as being the possession of the landlord, all that is meant is, that the possession enures to the benefit of the landlord. (2 Thomas' Coke, 179–180.) In possession must mean an actual seizin ; whilst the occupation of the tenant is not an actual possession by the landlord ; though, in such case, the landlord may be said to be actually seized of the reversion. (3 Id. 49–50 ; 1 Coke, Litt. 17 b.) · If the possession of the tenant is literally the possession of the landlord, then the action of trespass *quase clausum fregit*, ought to be maintainable by the landlord. But such is not the law ; for the reason that the landlord is seized of the estate, but the tenant is in possession, and the action must be commenced by him. (7 Term R. 13 ; 8 East, 190 ; 9 Bac. H. C. 3 ; 2 Saund. Pl. and Ev. 397 ; 2 Yates, R. 309.)

It never could have been the intention of the Legislature to give the benefit of the short bar to any but the settler on the land, to him who had obtained the apparent right, and this appears to be the Opinion of the Court. (Horton v. Crawford, 10 Tex. R. 389.) Could the fifteenth Section be pleaded in bar by a landlord, by reason of the possession of his tenant, extensive frauds throughout the State might be committed on the rights of meritorious owners and claimants of lands ; for then the possessor of large means might go over the whole State, select the best tracts of unoccupied lands in every county of it, make locations over the titles of others, place tenants in possession, and in three years perfect the title by adverse possession. This was not what was intended most evidently, but protection to a meritorious class of individuals, those settled on the lands they claimed.

If it be asked what provision is made for cases like this, the answer is that the fourteenth Section, which bars a right of entry after ten years, supplies it.

Our Statute is different from the Kentucky Statute, which protected the " actual settler " who had " a connected title in law or equity, deducible of record from the Commonwealth ;"

which the Court of Appeals of that State held might be said
of a tenant settled on the land by virtue of a lease. (2 Ken.
Dig. 865 ; White v. Bales, 7 J. J. Marsh. 538.) The Court
say, " the design of the Statute requires the protection of the
landlord who comes in after the tenant's term may have ex-
pired, and, therefore, an interpretation of the Statute, accord-
ing to its spirit, requires that the settlement and possession of
the tenant should inure to the benefit of the landlord." Again,
" the actual occupancy of the land, by settlement of seven
years, render a title deducible of record from the Common--
wealth, constitutes the bar which the Statute intended to pro-
vide, and whether there be one or more occupants during the
seven years is immaterial, provided they are connected with
the same title, and held under one another in succession or for
each other." This, it is presumed, would not have been said,
had that Statute, in addition to the language used, contained
the further provision that the title spoken of was to be a regu-
lar or irregular chain of transfer, " down to him in possession."

*Jones & Ballinger*, also, for appellant.

*Harris & Pease*, for appellees. I. The action of the
Ayuntamiento did not vacate the title of John McCormick.
The proceedings were entirely *ex parte ;* and the evidence
upon which the tribunal acted was not perpetuated. (1 White,
Recop. 279, 280.)

The league was granted to Shubael Marsh as the head of a
family, upon condition that the grantee, as the head of a
family, should reside in the country, and cultivate the land
within the time prescribed by law. This he has doubtless
done, at least the contrary does not appear. The Government
is in no better condition than an individual who had made a
similar grant. Would an individual be heard to contradict
the terms of his deed, and to say that it was for another, and
that the condition was that such other person should reside in

the country, and cultivate the land. Suppose Marsh had abandoned the country, or failed to cultivate, is it not evident that John McCormick, a stranger to the deed, would not have been permitted to arrest the forfeiture. Estoppels are mutual.

Suppose similar partitions among the members of an ordinary family ; will it be argued that each member was required to perform the conditions, &c. ? It will not do to say that the beneficiaries were and were not a family. See the recitals, too, in the deed from Marsh to McCormick.

The 23rd Section of the Act of 1823, and the 26th Section of the Act of 1825, gave the Ayuntamiento no power to declare the forfeiture of any lands except such as had been received by colonists and new settlers, who received bounties from the Government. This is a broad distinction between this case and that of Holliman.

II. The 4th Article of the law of 1823, and the 3rd and 17th Articles of the law of 1825, are not applicable to this case. In 1830 Marsh had been a colonist for six years ; and had received his land. The 17th and 26th Articles of the law of 1825, relate to grants made under that law. And Marsh had cultivated the land.

III. The colonial contract of 1828 shows that it was made for the introduction of families or new settlers ; and the augmentation, on its face, shows that Marsh did not belong to either class ; and that the augmentation was asked as a mere donation. Then we say Austin had no power to make this grant under his first contract, which had expired by its own limitation ; and he could not grant the land under the second contract, for, as we have seen, the appellant was not included within its provisions. In this view Austin seems to have concurred, for he professed to extend this title in virtue of a special concession of the Supreme Government of the State of Coahuila and Texas. But the concession did not pretend to give him power to do so, but professed to authorize the muni-

cipal Alcalde of the Municipality to extend the title. Now we submit that there is proof upon the face of the deed under which appellant claims, that it is void, for want of power in Austin to make the grant.

But if the title had been extended by an Alcalde, it would be void, because the land is situated within the littoral leagues, and it was made without the previous approbation of the General Supreme Executive power. (Edwards v. Davis, 3 Tex. R. 327 ; Republic v. Thorn, Id. 503, 510 ; Goode v. McQueen, Id. 241.)

IV. At Common Law the possession of the tenant is the possession of the landlord. (Clinton v. Farmon, 4 Bibb, 513 ; 5 Litt. 590.) The term "settlement" in the Kentucky Statute is a stronger word than the term "possession." (Hog v. Perry, 1 Litt. 272, 273 ; Smith v. Newell, 2 Id. 160 ; Trustees K. S. v. Payne, 3 Mon. 162.)

WHEELER, J. The Court excluded the plaintiff's title because it did not appear on the face of the grant, that it was made with the consent of the Executive of Mexico. In this the Court manifestly erred. This was a grant made under the 17th Article of the Law of the 24th of March, 1825, in augmentation of the quantity previously granted to the plaintiff as a colonist. It was granted to him as a colonist, on account of his possessing the qualities mentioned in the 17th Article, which entitled the colonist to an augmentation of the quantity mentioned in the three preceding Articles of the Law. And it has never been held necessary that the consent of the Federal Executive of Mexico should appear on the face of the title of a colonist, to land granted under a contract to colonize within the border or coast leagues. The contrary has been repeatedly decided. It is sufficient that the consent was given to the contract to colonize the territory comprising the grant. (Hatch v. Dunn, 11 Tex. R. 708 ; Republic v. Thorn, 3 Id. 510.)

Marsh  v.  Weir.

It is evident that this opinion of the Court, upon the valid-
ity of the grant, led to the rulings by which the other evi-
dence offered by the plaintiff was excluded.  And indeed after
excluding the grant, it was quite unnecessary to proceed fur-
ther with the case, as that ruling was decisive against the plain-
tiff.  But the defendant was permitted by the Court to intro-
duce evidence for the purpose of obtaining a verdict upon the
merits of his title.  This appeal therefore brings under revi-
sion the evidences of title of the parties respectively.

The plaintiff's evidence, improperly excluded, establishes
very satisfactorily, that although the original grant of the 8th
of July, 1824, was made ostensibly to the plaintiff as the head
of a family, yet he received three-fourths of it in trust for
McCormick and the other persons who constituted the family,
and that he was in fact the grantee of but one-fourth of the
league.  McCormick was in fact the grantee, as a colonist,
of the one-fourth now claimed by the defendant in his right ;
and the plaintiff was but an instrument by which the Govern-
ment transmitted to him the title.  (See Porter v. Hill, 14
Tex. R. 69.)  The deed from the plaintiff to McCormick, of
the 28th of December, 1824, was but the execution of the trust
confided in the plaintiff by the Government, for the benefit of
the grantee.  In the making of it, the plaintiff acted in
no other capacity than, as the agent and instrument of the
Goverment, to vest title in McCormick to his land as a col-
onist.  It was not a sale by the former to the latter.—
The relation of vendor and vendee did not subsist between
the parties to the conveyance ; and they are not affected
by any of the principles applicable to that relation.  Mc-
Cormick took the title as a colonist and not otherwise ;
and the having been made the instrument of its transmission
does not affect the plaintiff with the relations of vendor, or
in any manner conclude or affect his rights, any more than if
the title had passed directly from the Government to McCor-
mick, without his agency or intervention.  The mode of con-

stituting a family, adopted in this instance, for the purpose of making a grant under Austin's first contract, has been heretofore recognized and the grant held valid. (Hardeman v. Herbert, 11 Tex. R. 656.) Our conclusion then is, that McCormick was the grantee of the fourth of a league of land in question as a colonist; and when it became vacant by reason of his abandonment of the country, and the declaration of forfeiture, the plaintiff had the same right as any other person to apply for and receive a regrant of it; and there was nothing to prevent its appropriation by virtue of his concession.

The fact of abandonment, and the consequent forfeiture, is conclusively established by a judgment of a competent tribunal. (Holliman v. Peebles, 1 Tex. R. 673.) It is no objection to the validity of the judgment, that the grantee was not served with notice. He had gone beyond the reach of process; and moreover the proceeding was *in rem*, and acted directly upon the *status* of this thing.

It is objected to the plaintiff's title, that it was not executed in accordance with the power contained in the concession. This objection was not taken in the Court below, nor has it been noticed by the appellant in argument. If it had been taken at the trial, a special authority might have, perhaps, been shown, if that were necessary. But I apprehend it will be found, that as the grant related to the augmentation of a previous grant to a colonist, it was competent for the Commissioner to issue the title, although the concession empowered an Alcalde to do so. It is not perceived why the benefit of the 17th Article of the Law of the 24th of March, might not enure to a colonist who had received land under a former law, as well as to those who should receive it under the provisions of that law; and such appears to have been the construction placed upon the law by the authorities of the country, to whom its administration was entrusted. It appertained to the

Marsh v. Weir.

Government to grant the augmentation, and hence to make the concession; but it is not perceived why the commission might not extend the title. It, however, does not become necessary to express a final opinion upon this question, as it was not raised at the trial, and, as we have said, a special authority may possibly be proved upon another trial.

It remains to notice the defense of the Statute of limitations. The bar relied on is that of three years, prescribed in the 15th Section of the Statute, which protects the party "in possession under title or color of title," and which defines the term title, to mean "a regular claim of transfer from or under the sovereignty of the soil;" and "color of title" to be "a consecutive claim of such transfer, down to him, her or them in possession, without being regular; as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to, or include the intrinsic fairness and honesty," &c. (Hart. Dig. Art. 2391.) The Statute having thus defined the meaning of the terms employed, we are not at liberty, in construing this Section, to resort to other sources for their definition and meaning. The definition of "color of title," in this Section, is certainly very different from that which has been given by Courts to these terms; that is, "that which in appearance is title, but which in reality is no title." (Wright v. Mattison, 18 Howard, R. 56.) That is not the color of title defined in this Section of the Statute; and the Statute having defined the terms, we must look to the Statute for their meaning.

To constitute title, there must be "a regular chain of transfer from or under the sovereignty of the soil, and color of title is constituted by a consecutive claim of such transfer," that is, "from the sovereignty of the soil," "without being regular," &c. The party must hold under or deraign his title from the Government. (Castro v. Wurtzbach, 13 Tex. R. 128.) And

that he may do this, there must have been a grant. It may not, perhaps, be necessary that it should have been a valid grant; the land may have been previously granted to another, in whom, therefore, there would be the superior title; and still the second grant may be said to be a title, or transfer from the sovereignty of the soil. The first grantee might forfeit his grant, and the second hold the land. Such second grant might be held to constitutute color of title, under the Statute. And, such, perhaps, would be the case generally, where the grant or title was not absolutely, but only relatively void; or where it was apparently valid, but liable to be avoided and annulled by some matter extrinsic of the grant. But where it has been adjudged a nullity, and, in effect, recalled and cancelled by a competent tribunal, it is as though it had never issued; it is absolutely and to all intents and purposes a nullity. Of such a grant, after it has been thus adjudged void, it cannot be said that it constitutes title or color of title from the sovereignty of the soil. It has no longer a legal entity, and cannot form the basis of the limitation prescribed in the 15th Section of the Statute. Such is this case.

The "respective political authority," to whom was entrusted the power, upon abandonment of the country, or the non-performance of other conditions, to declare the forfeiture of the lands; or as it is expressed in the Law of 1825, to "take possession of them and recall the titles," (Art. 26,) did declare the forfeiture and nullity of the grant to McCormick, under which the defendant claims, and the land was regranted as being entirely vacant. The title was thus virtually recalled, and cancelled or annulled, and was henceforth to be regarded as though it had never had an existence. (Holliman v. Peebles, 1 Tex. R. 691, et seq.) And this was by the judgment of a tribunal whose proceedings were made a matter of record, and of public notoriety at the time, and have become a part of the history of the earlier land titles of this country, under

the Laws of Colonization. We, therefore, think it clear that this abrogated and annulled grant cannot be deemed a constituent of title or color of title, within the meaning of the 15th Section of the Act of Limitations.

The judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.