## GEORGE W. WHITEHEAD ET AL. V. MASON B. FOLEY ET AL.

By WHEELER, C. J.

The distinction between a seizin in deed and a seizin in law, or a freehold in deed and a freehold in law, cannot be said to obtain generally in this country.

It is the generally received American doctrine, that a conveyance by deed, a descent cast upon the heir, or a grant by letters patent from the government, carries the legal seizin, and gives a constructive possession to the grantee.

A conveyance of wild or vacant lands gives a constructive seizin thereof in deed to the grantee, and attaches to him all the legal remedies incident to the estate.

Generally in this country, certainly in this State, seizin means merely ownership, and the distinction between seizin in deed and in law is not known in practice.

The right thus drawing to it the legal seizin and possession of the owner, *per se*, he thus remains possessed until disseized by possession taken and held adversely by another.

From this doctrine, that the owner is deemed to be in actual possession, though neither he nor any one under him be actually residing on or occupying the land, it results that the owner is disseized or dispossessed by an adverse possession only to the extent and within the limits of the possession taken and held adversely.

There is a generally recognized, obvious, and important distinction between possession taken by a mere naked disseizor or intruder, that is, one who enters without claim or color of title, and a possession taken by a person under a colorable title: it is, that the possession of the former is confined to the land actually in occupation, whereas the possession of the latter is construed to be co-extensive with the boundaries described in the deed or muniment of title under which he claims.

The defendants claim under a survey made upon an unrecommended certificate, which is denounced by the law as illegal and void. (Paschal's Dig., Arts. 1861, 1862.)

The certificate not having been approved, both certificate and survey are utterly void as to all purposes and all persons.

Being nullities, the certificate and survey are to be deemed as nothing, for in law they have no validity or effect for any purpose whatever.

A nullity cannot serve as the basis of a claim of right, or give color of title, or relieve the defendants entering or holding under them from the character of mere naked disseizors, without claim or color of title.

The possession, to amount in law to a disseizin sufficient to bar the right of entry or confer a title, must be an actual occupation of such nature and notoriety as that the owner may be presumed to know that there is a possession of the land.

The occupation must be actual, visible, and notorious.

Actual, visible, and substantial inclosure is decisive proof of such disseizin, and also of the limits of it.                                         ·

But there are many cases which hold that an inclosure is not essential to constitute an actual adverse possession.

Upon this subject the court instructed the jury, that if the defendants "had ten years' adverse, peaceable, and continued possession of the land in question, claiming by boundaries openly and notoriously marked and defined for the period of ten years," find for the defendants.   Under the facts this was erroneous.   In this we think the court erred.

The actual possession could not be enlarged or extended beyond its actual limits by a mere verbal claim and marked line, however notorious, without something more on which to found a claim of right.

A constructive possession is an incident of ownership and results from title, and is in no way applicable to a case where the occupant defends himself avowedly and exclusively on the ground of his own wrong.

The person who has a warrant and survey has a legal seizin without actual entry, through the whole extent of his survey, and may support an action of trespass.                                         ·

No man has a right to enter for the purpose of making an improvement on land appropriated by a prior survey.   The person so entering is bound to take notice of the survey, and is in law a trespasser.   Having entered without title or legal color of title, his possession is confined to his actual occupation, and cannot be extended by construction.   The designation of his claim by marks on the ground is not an actual occupation, and consequently does not entitle him to the protection of the act of limitations. The seizin of the warranty is not divested by the marking of lines.

But there may be cases in which a jury might well presume an actual ouster, although the person who had the right was not excluded by inclosure or cultivation.

The defendant, F., claimed the protection of the five years' bar of the statute under a deed not properly authenticated for record as the deed of the wife whose estate it purports to convey.   The official designation of the person before whom the acknowledgment of the wife was taken is wanting to his

certificate. (Paschal's Dig., Art. 1003, Note 427.) This might, perhaps, be supplied, so as to render the deed effectual to pass the estate by conveyance; but it would seem that it cannot be held to have been "duly registered," within the meaning of the statute, as to the party whose estate it purports to convey. (Hart. Dig., Art. 2392; Paschal's Dig., Art. 4622.)

A party who claims to have acquired a title to the land of another, with no other evidence of right than a possession of five years, under a deed recorded, ought to show a compliance with the terms prescribed by the statute perfect in every particular.

### By MOORE, C. J.—On reconsideration.

It is the generally received American doctrine, that any valid conveyance of land transmits the legal seizin, and gives to the grantee constructive possession of the land to the extent of the boundaries defined in his title.

In·this State, seizin means simply ownership, and the distinction between seizin in deed and seizin in law is not known.

The legal title thus drawing to the owner the seizin and possession, he retains them until disseized by the actual possession being taken and held by another, from which it results that the owner is disseized or dispossessed by an adversary possessor only to the extent and within the limits of the possession taken and held adversely to him.

Though no invariable rule defining the acts which amount to a disseizin can be laid down, yet there is an important, obvious, and generally recognized distinction between a possession taken by a mere naked disseizor or intruder, who enters without color of title, and possession taken by a person under a colorable right. The possession of the former is confined to the land actually in his occupation, while that of the latter is construed to be co-extensive with the boundaries described in the deed or muniment of title under which he claims.

Unrecommended land certificates are denounced by statute (Hart. Dig., Arts. 1950, 1983, 1984; Paschal's Dig., Arts. 1861, 1862) as illegal and void. Such a certificate and a survey thereon are nullities to all intents and purposes, they cannot serve as a basis of a claim of right, give color of title, or in any manner relieve parties entering or holding under them from the character of mere naked disseizors, without claim or color of right.

The possession of such a disseizor, in order to amount in law to a disseizin sufficient to confer title or bar the owner's right of entry, must be an actual occupation of such nature and notoriety as that the owner may be presumed to know that there is a possession of the land. The occupation must be actual, visible, and notorious. Actual and substantial inclosure is decisive proof of such a disseizin and also of the limits of it, but no general rule, determining in all cases what other acts will amount to it, can be laid down. (Paschal's Dig., Arts. 4621, 4623.)

But the mere marking of lines and claiming to the boundaries defined by

them, without something on which to found a claim of right, will not amount to a disseizin of the owner, nor give a constructive possession which will support the plea of the statute of limitation to lands not in the actual possession of the defendant.

Therefore, where defendants claimed a league of land under a survey on an unrecommended land certificate, it was error, upon their plea of limitation, to charge the jury in effect, that if the defendants had had ten years' adverse, peaceable, and continuous possession, claiming by boundaries openly and notoriously marked and defined for the period of ten years, they were entitled to a verdict co-extensive with the lines of the void survey under which they claimed, irrespective of the limits of their actual occupation and of the excess of their survey above six hundred and forty acres.

The certificate of acknowledgment to a deed is defective unless it disclose the official character of the officer by whom it was made, and upon an acknowledgment defective in this respect a deed cannot, it seems, be "duly registered," so as to support the plea of five years' limitation.

A contingent fee in a suit for land is such an interest in the result of the suit as disqualifies the wife of the attorney holding it to testify in behalf of his client.

Where the ground upon which testimony was excluded by the court below is not shown in the bill of exceptions, this court does not feel called upon to review the ruling of the court below in excluding the evidence, unless injustice has manifestly been done.

APPEAL from Lavacca. The case was tried before Hon. FIELDING JONES, one of the district judges.

In 1831 Mrs. Eleanor Leving, a widow, came with her son to Austin's colony, where for three years she resided in the family of Granville McNeil. She declared her intention to become a citizen of the country. On the 8th of December, 1831, she solicited and obtained a grant of a league of land from the proper authorities of Austin's colony. The grant was every way in due form. The land was situated upon the Navidad, and is the property in controversy. The survey called for the league of Ephraim Whitehead, who was the brother of Mrs. Leving. Mrs. Leving's son seems to have been an unsettled young man, and was killed by the Mexicans in 1836. He and his mother had never settled on the land. She followed no occupation in the country.

In 1837 Mrs. Leving returned to New Orleans, Louisiana, where she continued to reside until her death, in 1850. But on leaving Texas she declared herself delighted with the country, and expressed her intention to return, and she often renewed this declaration until her death. She died parentless and childless, leaving the children of her brother, Ephraim Whitehead, the plaintiffs, as her only heirs. Ephraim Whitehead resided some three years in Texas, but whether as a citizen or not seems to be doubtful. There was much proof upon this point, but it was immaterial, as Mrs. Leving died after the annexation of Texas, and her heirs were citizens of the United States. By the death of Mrs. Leving the land was cast, by descent, upon the plaintiffs, George W. Whitehead, Ella C. Whitehead, and Mrs. Harriet M. (Whitehead) Phelps, the children of Ephraim Whitehead, and plaintiffs below.

According to the theory then prevailing in the colonies, an opinion got abroad that Mrs. Leving had not the capacity to take the land at the date of her grant, she then being, as was charged, an alien to the Mexican republic, and not "the head of a family," within the meaning of the colonization laws, and that if she obtained any title she forfeited it by going to reside in a foreign country.

Acting upon this belief, Naham Mixon settled upon the land in 1835, declaring that he had discovered that it was vacant. He sold the north half to Mason B. Foley, and he made a crop there in 1836, and seems to have died there during the year 1837.

Under the 12th section of the act of 14th December, 1837, "to establish a general land office," &c., (Paschal's Dig., Art. 4140, Note 953,) the widow and administratrix and S. P. Foley, administrator of Naham Mixon, proved the head-right of Naham Mixon before the proper county commissioners; and on the 9th of April, 1838, she (Sarah Mixon) located the certificate upon the Leving league.

Mrs. Mixon afterwards married Hardy King, and, on

the 4th May, 1848, joined by her husband, the said Hardy, she conveyed the north half of the league to Mason B. Foley.

The deed was in the usual form, and the form of acknowledgment was as follows:

"STATE OF TEXAS,
"*Lavaca County.*

"Personally came before me the undersigned authority, Sarah King, wife of Hardy King, who is personally well known to me, and being examined by me separately and apart from her said husband, after having fully explained the contents of the foregoing deed to her, she acknowledged that she signed and sealed the same, for the purposes therein contained, freely, and without any constraint from her said husband or any other person whatever, and now wished not to retract.

"To certify which I hereto sign my name and affix my seal, on the 13th day of May, A. D. 1848.

"COLLAT BALLARD."

It was proved by a number of witnesses that this conveyance was only the ratification of a verbal sale which Mixon had made to Foley in 1835. Foley had settled upon this north half that year, and he continued to reside there, by himself or tenants, until the trial of this suit in 1857. "He made a crop of cotton there before 1836, and was there at the run-away of the inhabitants in 1836." He put three hundred acres under fence, and cultivated upwards of one hundred acres. Mrs. Sarah Mixon King, and her husbands, King and afterwards Morris, continued to reside upon the lower or south half of the league until the trial of the suit. She made improvements and cultivated.

There was proof that the certificate of Mixon was not recommended by the travelling board of land commissioners; and because it had not been recommended by that board, and because the location and survey conflicted

18—XXVIII

with the Leving grant, the commissioner of the general land office had refused to issue a patent; and it was also in proof that, on the 19th of November, 1841, Mrs. Sarah Mixon King and her husband, Hardy King, as guardians of Mixon's children, brought suit against the republic in the District Court of Colorado county for confirmation of the certificate; but a verdict was found for the republic, and that decision was confirmed by the Supreme Court, so that the Mixon title stood unconfirmed.

On the 8th of September, 1843, Mrs. Eleanor Leving commenced suit in the District Court of Colorado county against Mason B. Foley, Hardy King, and Sarah King, his wife, for the recovery of this land. The defendants plead what they conceived to be the vices of the plaintiff's title, that she was an alien, was not the head of a family, had abandoned the country, &c., and their own location under the Mixon certificate, and the purchase by Foley from King and wife, &c., &c. The plaintiff, having been twice ruled to give security for costs, and not having complied, on the 9th of September, 1847, the case was dismissed for want of a cost bond. Thus stood the case on the 11th of September, 1855, when George W. Whitehead and his sisters commenced this suit in a form and title more special than the action of trespass to try title, declaring that they held by direct descent from Leving against Sarah King and Mason B. Foley, to recover this tract of land. J. G. Morris, the third husband of Sarah Mixon King Morris, was brought in by *scire facias.*

The defendants plead that Mrs. Leving's grant was void, because she was an alien to the republic of Mexico when it was obtained, and was never domiciliated in the Mexican nation, had abandoned the country without selling, &c. They also plead the three, five, and ten years' statute of limitation, needlessly setting out all the particularities of their title, and color of title; that is, certificate, location, and survey, and over twenty years' residence and

cultivation, &c., and they suggested valuable improvements.

To the pleas of limitation, &c., the plaintiffs replied fraud in having located and surveyed, well knowing the existtence of the plaintiffs' grant to their ancestress, Eleanor Leving, and the conflict of the Mixon location therewith, and intending to take advantage of the ignorant "old widow," and to eke out titles under the law of limitation, &c.

[According to the principle ruled in Whitehead v. Foley (*ante*, p. 1) this replication was immaterial.]

They also attacked the certificate under which the location was made, as having never been approved by the proper authorities of Texas, and the deed on which the plea of five years rested as being void, because Foley, the grantee, knew of all the fraud and covin in the original locators of the Mixon certificate, which uncovered the land, and because the deed had not been duly acknowledged and recorded.

The replication was a very general and special denunciation of these "frauds and covins."

Therefore the case made by the pleadings was:

I. The plaintiffs asserted their rights as heirs under the colonist grant to Eleanor Leving.

II. The defendants denied the capacity of Eleanor Leving to take as a colonist, and also asserted that, if she had the capacity to take, she forfeited the land by going to reside in a foreign country. [An objection not proved.] ·

III. The defendants claimed title and color of title under the Mixon certificate and the location and survey thereunder. But the plaintiffs averred and proved that this certificate was never approved, as required by law. (Paschal's Dig., Arts. 4211, 4216, 4226, 4240, 1861, 1862, Note 967.)

IV. They plead title and color of title under the pleas founded on the 15th section of the statute of limitation,

and M. B. Foley claimed under a recorded deed under the 16th, section, and they both claimed to the extent of their boundaries under the 14th and 17th sections of the statute of limitation. (Paschal's Dig., Arts. 4621, 4622, 4623, 4624, Notes 1030, 1031, 1032, 1033.)

V. The plaintiffs sought, by replication, to destroy these pleas, by averring fraud in the *motive* and the acts of location, survey, and conveyance under the void location, and rascality in the over twenty years of occupancy, use, and cultivation.

This was the case by the pleadings.

The further facts are, that the defendants proved the survey of the Mixon certificate to have been by marked boundaries, the extent of their possession, the value of their improvements, the verbal sale by Mixon in his lifetime to M. B. Foley of the north half of the league, (a fact not noticed in the opinion;) the general notoriety of the defendants' claim to the extent of their marked survey, &c.

They made many efforts to prove that Mrs. Eleanor Leving was never domiciliated in Texas, but the proof to the contrary seemed to be conclusive.

As a portion of their evidence, the plaintiffs offered the deposition of Mrs. Virginia Hutchinson. C. Y. Hutchinson, Esq., one of the plaintiffs' attorneys, admitted that the witness was his wife, and that he had a contingent fee in the suit. On objection of the defendants, based on these facts, the deposition was excluded by the court, and the plaintiffs excepted.

In the bill of exceptions of the plaintiffs, they objected to the deed from King and wife to Mason B. Foley, on the ground that it had been proved that the Mixon certificate had been rejected by the traveling board, and by the Supreme and District Courts, and that Foley knew that the location was void and in conflict with the Leving league; and, moreover, that the deed was uncertain as to calls, and had not been duly acknowledged and registered,

as required by a married woman.  But these objections were overruled, and the deed read to support the plea of five years.  There was no accurate proof of the payment of tax s under this plea.

Th e were also exceptions to excluding the evidence of Mrs. utchinson, the plaintiffs' attorney's wife, on the ground that her husband had a contingent fee, and that she was his community partner, as also because other depositions were excluded.  But this evidence only tended to prove facts already abundantly proved, as to Eleanor Leving's residence in Texas, her grant, &c.

It may be mentioned, as an additional feature of the history, that a labor-augmentation certificate was granted to Eleanor Leving, and a third-of-a-league certificate was granted to the representatives of her son, under the constitution of the republic and the law of 1837.

It was also proved that Mason B. Foley a part of the time held by tenants, and that sometime elapsed between tenants, but Foley's property was always there.

The foregoing is the material history of the facts plead and proved in the case.

The instructions of the court covered the hypothesis of alienage of the plaintiff and her abandonment of the country; of title and color of title under the pleas of three, five, and ten years; of the interruption of the running of the statute by the institution of a suit dismissed for want of cost bond, more strongly in favor of the plaintiffs than is ruled in Highsmith v. Ussery, 25 Tex. Supp., 96; of the effect of five years' possession under a deed duly registered, &c., &c.

The instructions are here given in full, that they may be understood.  They were as follows:

"Unless you believe from the evidence that Eleanor Leving voluntarily abandoned the country without any intention of returning, her title would be good and valid;

and if you believe from the evidence that the plaintiffs are the legal heirs of Mrs. Leving, you should find for the plaintiffs.

"If you believe that the defendants, or either, have had five years' peaceable, adverse, and continuous possession, using and enjoying the land, paying taxes thereon, claiming under deed or deeds duly registered and recorded, I charge you such peaceable adverse and continuous possession for five years would bar the right on the part of the plaintiffs.

"I further charge, that if you believe that the defendants, or either of them, have had ten years' adverse, peaceable, and continuous possession of the land in question, claiming by boundary, openly and notoriously marked and defined for the period of ten years, then you should find for the defendants.

"I further charge you, that if you believe the defendants have had only ten years' adverse, peaceable, and continuous possession, without any marked boundary, you should give the title to the defendants, each six hundred and forty acres, and you should find for the plaintiffs the remainder of the league after deducting what you find the defendants are entitled to under the five years' possession or ten years' possession, claiming by marked boundary, or by ten years' possession without marked limits. The possession, in the meaning of this act, must be peaceable, adverse, and continuous; and pendency of a suit for the land, brought by the plaintiffs, or those through whom they claim, would stop or interrupt the running of the limitation; and it would make no difference after the plaintiffs had suffered non-suit, or had their suit dismissed; and the possession, to be made available to defendants, must be for the whole period, without any interruption.

"The possession may be held either by the defendants or their tenants.

"In your finding you can find a part of the land for the

plaintiffs, if you think the defendants have not shown themselves entitled by prescription to the whole lands.

"If the jury believe from the evidence that Mason B. Foley held peaceable and adverse possession of the north half of the said league of land five years before the institution of this suit, using, cultivating, and enjoying the same, and paying taxes thereon, and claiming under deed or deeds duly registered and recorded in Lavaca county, you should find for the said Mason B. Foley a verdict for that part."

The court refused to the defendants instructions that Eleanor Leving forfeited the land by leaving the country less than six years after the grant.

The jury returned a general verdict for the defendants, on which there was judgment, from which the plaintiffs appealed.

*I. A. Paschal,* for appellants.—The plaintiffs sue as sole heirs at law of Eleanor Leving, to recover of defendants a league of land granted to their intestate as a widow and head of a family in Austin's colony.

The defendants resist the claim, on the ground that, if any land were ever granted to Eleanor Leving, she lost the same by abandonment of the country; that the plaintiffs have not proved their heirship, and they finally plead and rely on sections 14 and 15 of the statute of limitation to bar the plaintiffs' right to recover. M. B. Foley also plead the bar of five years, under section 16 of the act of limitation, to the extent of the north half of the league of land.

The validity of the grant to Mrs. Leving is not disputed. The heirship is fully proved.

There being no proof of intention of abandonment, and the heirship of the plaintiffs being fully established, the only question presented is, are the plaintiffs barred of their rights to recover by either of the provisions of the statute of limitation; and, if so, by which?

The plea of three years cannot avail, because the league and labor certificate to Naham Mixon, by virtue of which the same was surveyed, was rejected by the traveling board of land commissioners; therefore it cannot form the foundation of the three years' bar.

Next, can the defendants avail themselves of section 14 of the act of limitation, and successfully plead adverse possession in bar of the right of plaintiffs to recover? I think not. (Paschal's Dig., Art. 4621, Note 1030.)

First, because the statute has not been well plead. They do not allege peaceable adverse possession, claiming the land for ten years, during which time plaintiffs had not made entry thereon.

The earliest possession as proved was in 1835. This was interrupted by suit in 1843, which was finally dismissed by the court at the spring term, 1847. Only eight years elapsed after the dismissal of this suit till the institution of the present.

Therefore it is clear that the ten years cannot be successfully invoked. But Mason B. Foley attempts to set up the five years' limitation under a registered deed from Sarah King, formerly the wife of Naham Mixon, and her husband, Hardy King, and alleges peaceable possession, use, and enjoyment, and paying taxes thereon for five years immediately preceding the institution of this suit. The deed bears date May 4, 1848, and purports to have been executed before J. W. Robinson and Hiram S. Foley as attesting witnesses.

The deed purports to convey to the vendee the north half of the Naham Mixon head-right league on the west side of the Navidad creek, being the same on which they were living, and merely refers to the field-notes of the recorded surveys of the Mixon head-right to define the boundaries of said league.

This sale was some years after the head-right certificate

of Naham Mixon had been registered, and when the same was barred by a constitutional inhibition.

To have sold or bought a fraudulent certificate at the time was a penal offense.

The deed was never duly registered. The acknowledgment of Mrs. Sarah King, who was the real vendor, as she sold the head-right of her deceased husband, was before no officer known to the law. It purports to be "before me, the undersigned," and is signed by Collat Ballard, without any official designation.

The signature of Hardy King is proved before the county clerk of Lavaca county by James W. Robinson, who swears that he saw Hardy King sign, seal, and deliver the instrument, &c., and that he, said witness, "signed the same as an attesting witness." He does not say that he saw Sarah King sign the deed, or that he was a witness to her acknowledgment; nor does he say that the other witness, H. S. Foley, signed in his presence.

The deed therefore stands as if only one witness signed as to one of the parties. This was not sufficient to admit it to record, and the deed is not duly registered.

Should these errors not be sustained by the court, there are two assignments which must reverse the cause.

It was error to overrule the affidavit for a continuance.

It was clearly error to rule out the answers of Mrs. E. A. Mathiew to interrogatory 9, page 110; and, indeed, all her answers ruled out tending to prove heirship, if other proof of heirship will be required.

It may be noted here, that M. B. Foley's possession was not continuous. He left the place in 1852, and before five years after his deed. And the testimony of others following in the possession is not very satisfactory nor connected. And under the ten years' limitation, under section 14 or section 17, he could not avail himself of such tenancy.

*Hutchinson & Meginson*, also for appellants.

*George W. Smith*, for appellees.—The plaintiffs claim the league sued for by inheritance from Eleanor Leving, to whom the land was granted in 1831.

Heirship is made out by proof of relationship; heirship is a question of law arising from the proof of relationship. (4 J. J. Marsh., 651; 3 Marsh., 327; 4 Monr., 367; 5 J. J. Marsh., 148.)

There was no proof of the marriage of the parents of E. Whitehead and Eleanor Leving, or that her parents were dead, who by law would inherit her estate; or that the mother of these plaintiffs ever was married to E. Whitehead; or that E. Whitehead is dead. None of these indispensable facts are proved, or any evidence conducing to prove them. (2 Greenl. on Ev., § 354.)

Mrs. Leving called E. Whitehead brother, but they may have been illegitimate brother and sister. Their legitimacy should have been proved by proof of marriage.

The defendants plead and relied upon the five and ten years' limitation.

It is clearly proved that the defendants, Foley and Mrs. Morris, have since 1835 been in the continuous occupancy and possession of the league of land, claiming it as the head-right of Naham Mixon. Foley occupied and claimed the north half, and Mrs. Morris the south half of the league; that it was surveyed in 1838, the lines plainly marked and defined. This possession is believed to be sufficient to raise the presumption of a grant from the government, that they had acquired all outstanding claims. (14 Tex., 285.)

The possession is sufficient to sustain the ten years' limitation under Art. 2390, Hart. Dig.; 13 Tex., 111.

The deed from King and wife to Foley for the north half of the league was registered in 1847, and Foley's possession from 1847 and payment of taxes would protect him under the five years' limitation. (5 Tex., 258; 10 Tex., 385.)

And this and the ten years' limitation is available, independent of good or bad faith.   (13 Tex., 111.)

The suit instituted in Colorado county in 1843 was dismissed in September, 1844, under a rule for costs, and never reinstated in a legal manner.   The order to reinstate the case was conditional and void.   (6 Tex., 199; J. J. Marsh., 479.)   It was stricken from the docket April, 1847, as improperly on it.

This suit, having been brought and dismissed, is no answer to the plea of limitation.   (1 Paige Ch., 239; 6 Ired., 428; 3 Harr., 269; 1 Serg. & Rawle 239; 3 McCord, 452; 8 Cranch, 84; 4 Bibb, 305; Ang. on Limit., § 328.)

Mrs. Hutchinson, as the wife of C. Y. Hutchinson, would be entitled to one-half of her husband's conditional fee in this case, and hence was interested, and could not testify sooner than her husband.

DECEMBER 27, 1858.—On reconsideration.

WHEELER, C. J.—The distinction between a seizin in deed and a seizin in law, or a freehold in deed and a freehold in law, cannot be said to obtain generally in this country.   It is the generally received American doctrine that a conveyance by deed, a descent cast upon the heir, or a grant by letters patent from the government, carries the legal seizin, and gives a constructive possession to the grantee.   (Horton v. Crawford, 10 Tex., 388; Barr v. Gratz, 4 Wheat., 213; 4 Mass., 546; 1 Mumf., 170; Ang. on Limit., § 394, et seq.)

"We are entirely satisfied," said the Supreme Court of the United States in Green v. Liter, 8 Cranch, 229, "that a conveyance of wild or vacant lands gives a constructive seizin thereof in deed to the grantee, and attaches to him all the legal remedies incident to the estate."   (Per Story, J., Ib,)

Generally in this country, certainly in this State, seizin means merely ownership, and the distinction between

seizin in deed and in law is not known in practice. '(4 Day, 305; 4 Mass., 489; 10 Tex., 388.)

The right thus drawing to it the legal seizin and possession of the owner, *per se*, he thus remains possessed until disseized by possession taken and held adversely by another.

From this doctrine, that the owner is deemed to be in actual possession, though neither he nor any one under him be actually residing on or occupying the land, it results that the owner is disseized or dispossessed by an adversary possession only to the extent and within the limits of the possession taken and held adversely. But what acts shall constitute such adversary possession as to amount to a disseizin is often a question of great difficulty. The difficulty, if not the impracticability, of laying down any precise rule applicable to all cases has often been felt and acknowledged; yet there is a generally recognized, obvious, and important distinction between possession taken by a mere naked disseizor or intruder—that is, one who enters without claim or color of title—and a possession taken by a person under a colorable title. It is, that the possession of the former is confined to the land actually in occupation; whereas the possession of the latter is construed to be co-extensive with the boundaries described in the deed or muniment of title under which he claims. This distinction is maintained in numerous decisions by the Supreme Court of the United States and the State courts, which hold that, where the tenant enters under a claim and color of title, he is to be regarded with more favor than a mere naked disseizor, and as entitled to all the land within the limits prescribed by the instrument under which he claims; while a mere intruder, who enters without claim or color of right, is confined to the limits of his actual adversary possession. (Ang. on Limit., ch. 31, and cases cited.)

This distinction is important to be observed in the present case, for the defendants do not appear to have entered

or to hold under color of title. They claim under a survey made upon an unrecommended certificate, which is denounced by the law as illegal and void. (Hart. Dig., Arts. 1983, 1984, 1950.) Both certificate and survey are utterly void as to all purposes and all persons. Being nullities, they are to be deemed as nothing, for in law they have no validity or effect for any purpose whatever. So considered, they cannot serve as the basis of a claim of right, or give color of title, or relieve the defendants entering and holding under them from the character of mere naked disseizors without claim or color of right. (Marsh v. Weir, 21 Tex., 97.)

The question then is, to what extent does their possession operate a disseizin of the plaintiffs. To this question the authorities furnish the answer in general terms, that the possession, to amount in law to a disseizin sufficient to bar the right of entry or confer a title, must be an actual occupation of such nature and notoriety as that the owner may be presumed to know that there is a possession of the land; "otherwise," as has been said, "a man may be disseized without his knowledge, and the statute of limitation run against him, while he has no ground to believe that his seizin has been interrupted." (4 Mass., 416.) The occupation must be actual, visible, and notorious; but the difficult question still remains as to the acts which shall be held to amount to such occupation, as to give notice to the owner of the adverse possession and its extent. No general definition, short of the assertion of a merely arbitrary rule, can relieve this question of difficulty in its application to particular cases. "Actual, visible, and substantial inclosure is decisive proof of such disseizin, and also of the *limits* of it." (Ang. on Limit., § 395 and notes.) But there are many cases which hold that an inclosure is not essential to constitute an actual adverse possession. (Id., §§ 397, 398; 10. Serg. & Rawle, 303; 7 Watts, 580; 6 Pet., 513; 10 Id., 442; 11 Id., 55.)

In the case under consideration, as at present presented, it does not become necessary to enter upon a critical examination of the authorities upon the question, with a view to determine what acts will amount to a disseizin, and within what limits. The charge of the court renders such examination at present unnecessary, and it may not become so upon another trial. Upon this subject the court instructed the jury, that if the defendants had "had ten years' adverse, peaceable, and continuous possession of the land in question, claiming by boundary openly and notoriously marked and defined for the period of ten years," they should find for the defendants; that is, as it must be understood with reference to the evidence, if a party has been in possession, claiming openly and notoriously by marked and defined boundaries for the period prescribed by the 17th section of the statute, his possession and disseizin of the owner will not be confined to six hundred and forty acres, or to the limits to which he has actually used or occupied the land, by inclosure or otherwise, but will extend to the marked boundary to which he claims: in this case to the boundaries of the league. In this we think the court erred. The boundaries referred to must have been the lines of the survey made upon the unrecommended certificate. The evidence does not show particularly the character of the defendant's posession, or its extent; but it will suffice for the present to observe, that it is not shown to have extended to the boundary to which they claimed. And we are of opinion that it could not be enlarged or extended beyond its actual limits by a mere verbal claim and marked line, however notorious, without something more on which to found a claim of right. A similar question came before the Supreme Court of Pennsylvania, where questions of this nature appear to have been very frequently and ably examined. An opinion, it was said, had been entertained, that a wrong-doer, entering on unseated lands, in what were called the back lands in

that State, might acquire a constructive possession of whatever he could hold as an improver, if the land were vacant, and for that purpose might avail himself of the survey of the owner, or establish a boundary of his own, and that he would be considered in the constructive possession of all the land thus inclosed. This the court considered decidedly wrong, for a constructive possession is an incident of ownership, and results from title, and is in no way applicable to a case where the occupant defends himself avowedly and exclusively on the ground of his own wrong. (Miller v. Shaw, 7 Serg. & Rawle, 129, 137.)

In a later case, the court said, "The person who has a warrant and survey has a legal seizin, without actual entry, through the whole extent of his survey, and may support an action of trespass. No man has a right to enter, for the purpose of making an improvement, on land appropriated by a prior survey. The person so entering is bound to take notice of the survey, and is in law a trespasser. Having entered without title, or legal color of title, his possession is confined to his actual occupation, and cannot be extended by construction. The designation of his claim by marks on the ground is not an actual occupation, and consequently does not entitle him to the protection of the acts of limitation. The seizin of the warrantee is not divested by the marking of lines." (Boyer v. Benlow, 10 Id., 305, per Tilghman, C. J.) The court went on further to say, "But there may be cases in which a jury might well presume an actual ouster, although the person who had the right was not excluded by inclosure or cultivation." And they state cases where they suppose a jury might well presume an actual ouster of the owner, so as to give the possessor the benefit of the statute of limitation to the extent of his claim, though he entered without color of title. (Ib., 306; and see Criswell v. Altemus, 7 Watts, 565, 580.) These cases are cited only for the purpose of showing that it has been elsewhere held, that the merely

marking of lines, and claiming to the boundaries thus defined, will not amount to a disseizin of the owner, or give a constructive possession which will support the plea of the statute of limitation to land not in the actual possession of the defendant. This, we think, is clearly the law, as applicable to our statute of limitation. As the defendants did not enter or hold under color of title, the case does not come within the decision of this court in Charle v. Saffold, 13 Tex., 94. The case, as presented, does not call for a further expression of opinion upon the effect of possession, or what will amount to adverse possession, within the meaning and intention of our statute of limitation; and we desire to be understood as intending to decide only that there was error in the charge of the court in the particular we have indicated, which, as we cannot know that this error did not control the verdict, will require a reversal of the judgment.

In reference to another portion of the charge of the court, upon the effect of five years' possession, it may prevent the occasion for another appeal to observe, that the deed from King and wife, under which the defendant, Foley, claimed the protection of the five years' bar of the statute, does not appear to have been properly authenticated for record as the deed of the wife, whose estate it purports to convey. The official designation of the person before whom the acknowledgment of the wife was taken is wanting to his certificate. This might, perhaps, be supplied, so as to render the deed effectual to pass the estate by the conveyance. But it would seem that it cannot be held to have been "duly registered," within the meaning of the statute, as to the party whose estate it purports to convey. (Hart. Dig., Art. 2392.)

A party who claims to have acquired a title to the land of another, with no other evidence of right than a possession of five years under a deed recorded, ought to show a compliance with the terms prescribed by the statute per-

fect in every particular.  It seems, therefore, that the evidence did not call for a charge upon the effect of possession under a deed duly registered, and that the instruction upon this point was calculated to mislead.

Because of the error in the charge of the court upon the statute of limitation, the judgment must be reversed and the cause remanded.

NOVEMBER 9, 1866.—On reconsideration.

MOORE, C. J.—It is the generally received American doctrine, that any valid conveyance of land carries the legal seizin and gives constructive possession to the grantee to the extent of the boundaries defined in his title. (Horton v. Crawford, 10 Tex., 388: Barr v. Gratz, 4 Wheat., 213; Ang. on Limit., § 394, *et seq.*)

"We are well satisfied," said the Supreme Court of the United States, in Green v. Liter, 8 Cranch, 229, "that a conveyance of wild or vacant land gives a constructive seizin thereof in deed to the grantee, and attaches to him all the legal remedies incident to the estate."  Generally in this country, certainly in this State, seizin means merely ownership, and the distinction between seizin in deed and in law is not known. (4 Day, 305; 4 Mass., 487; 10 Tex., 388.)  The legal title thus drawing to the owner, *per se*, the seizin and possession, he retains them until disseized by the actual possession being taken and held by another.

From this doctrine, that the owner is deemed to be in possession, though neither he nor any one under him is actually residing on or occupying the land, it results, that the owner is disseized or dispossessed by an adversary possessor only to the extent and within the limits of the possession taken and held adversely.  What acts will amount to a disseizin is often a question of great difficulty.  It has often been acknowledged impossible to lay down any rule which will be applicable to all cases.  Yet

19—XXVIII

there is an important, obvious, and generally recognized distinction between possession taken by a mere naked disseizor or intruder, that is, one who enters without color title, and possession taken by a person under a colorable right. The possession of the former is confined to the land actually in occupation; that of the latter is construed to be co-extensive with the boundaries described in the deed or muniment of title under which he claims. This distinction is maintained in numerous decisions by the Supreme Court of the United States and the State courts, which hold, that where the occupant enters under a claim or color of title he is to be regarded with more favor than a naked disseizor, and as entitled to all the land within the limits prescribed by the instrument under which he claims; while a mere intruder, who enters without claim or color of right, is confined to the limits of his actual adversary possession. (Ang. on Limit., ch. 31, and cases cited.)

This distinction is important to be observed in the present case, for the defendants do not appear to have entered or to hold under color of title. They claim under a survey made upon an unrecommended certificate, which is denounced by the law as illegal and void. (Hart. Dig., Art. 1950, 1983, 1984.) Both certificate and survey are utterly void as to all purposes and persons. Being nullities, they are to be deemed as nothing, for in law they have no validity or effect for any purpose whatever. So considered, they cannot serve as the basis of a claim of right, or give color of title, or relieve the defendants entering and holding under them from the character of mere naked disseizors without claim or color of right. (Marsh v. Weir, 21 Tex., 97.) The question then is, to what extent does their possession operate a disseizin of the plaintiffs? To this question the authorities furnish the answer in general terms, that the possession, to amount in law to a disseizin sufficient to bar the right of entry or confer a title, must be an actual occupation of such nature and notoriety as

that the owner may be presumed to know that there is a possession of the land. " Otherwise," as has been said, " a man may be disseized without his knowledge, and the statute of limitation run against him, while he has no ground to believe that his seizin has been interrupted." (4 Mass., 416.) The occupation must be actual, visible, and notorious. But the difficult question still remains, as to the acts which shall be held to amount to such occupation as to give notice to the owner of the adverse possession and its extent. No general definition, short of the assertion of a merely arbitrary rule, can relieve this question of difficulty in its application to particular cases. "Actual, visible, and substantial inclosure is decisive proof of such disseizin, and also of the limits of it." (Ang. on Limit., § 395, and notes.) But there are many cases which hold that an inclosure is not essential to constitute an actual adverse possession. (Id., §§ 397, 398; 10 Serg. & Rawle, 303; 7 Watts, 580; 11 Peters, 55; 10 Id.. 442; 6 Id., 513.)

In this case, as now presented, it is not necessary to enter upon a critical examination of the authorities upon the question, with a view to determine what acts will amount to a disseizin, and to what limits it will extend. The charge of the court renders such examination at present unnecessary, and it may not become so upon another trial. Upon this subject the court instructed the jury, that, if the defendants had "had ten years' adverse, peaceable, and continuous possession of the land in question, claiming by boundary openly and notoriously marked and defined for the period of ten years," they should find for the defendants; that is, as it must be understood with reference to the evidence, if a party have been in possession, claiming openly and notoriously, by marked and defined boundaries, for the period of ten years, his possession and disseizin of the owner will not be confined to six hundred and forty acres, or the limits to which he has actually used and occupied

the land by inclosure or otherwise, but will extend to the marked boundary to which he claims: in this case to the boundaries of the league. In this charge, we are of opinion the court erred. The boundaries referred to must have been the lines of the survey made upon the unrecommended certificate. The evidence does not show particularly the character of the defendants' possession or its extent, but it will suffice for the present to observe, that it is not shown to have extended to the boundary to which they claimed; and we are of opinion that it could not be enlarged or extended beyond its actual limits by a mere verbal claim and marked lines, however notorious, without something more on which to found a claim of right.

A similar question came before the Supreme Court of Pennsylvania, where questions of this nature appear to have been very frequently and ably examined. An opinion, it was said, had been entertained that a wrong-doer, entering on unseated lands, in what were called the back lands in that State, might acquire a constructive possession of whatever he could hold as an improver if the land were vacant, and for that purpose might avail himself of the survey of the owner, or establish a boundary of his own, and that he would be considered in the constructive possession of all the land thus inclosed. This the court considered decidedly wrong; for a constructive possession is an incident of ownership, and results from title, and is in no way applicable to a case where the occupant defends himself, avowedly and exclusively, on the ground of his own wrong. (Miller v. Shaw, 7 Serg. & Rawle, 129, 137; see also Boyer v. Benlow, 10 Id., 305; Criswell v. Altemus, 7 Watts, 565, 580.) The cases we have cited show it has been elsewhere held, that the mere marking of lines and claiming to the boundaries thus defined will not amount to a disseizin of the owner, or give a constructive possession which will support the plea of the statute of limitation to land not in the actual posession of the defendant.

This, we think, is clearly the law as applicable to our statute of limitation. As the defendants did not enter or hold under color of title, the case does not come within the decision of this court in the case of Charle v. Saffold, 13 Tex., 97. The case, as presented, does not call for a further expression of opinion upon the effect of possession, or what will amount to adverse possession, within the meaning and intention of our statute of limitation; and we desire to be understood as intending to decide only that there was error in the charge of the court in the particular we have indicated.

The official designation of the person before whom the acknowledgment of Mrs. King was taken to the deed from King and wife to the defendant, Foley, is wanting to his certificate, and for this reason it is insisted the defendant cannot claim, under the registration of this deed, the protection of the five years' bar of the statute. This objection would seem to be well taken, unless the defect and informality of the certificate are aided or supplied by the seal, which, from the transcript, seems to have been attached to the certificate as evidence of an official action by the party before whom the acknowledgment was made. In the present attitude of the case, we do not feel disposed to decide whether a certificate in this form is sufficient, if accompanied by the proper official seal. If it is, the transcript does not enable us to say that the omission in this certificate is thus supplied. This could be ascertained only by an inspection of the deed, or at least something more than the mere scrawl which, in the transcript of the record brought to this court, stands in place of the seal.

The objection to the deposition of Mrs. Virginia Hutchinson was properly sustained. Her husband had a contingent interest in the result of the suit favorable to the parties in whose behalf her testimony was offered. This evidently disqualified her as a witness for them.

The grounds upon which the court excluded the other

testimony offered by the plaintiffs is not shown in the bill
of exceptions.    Where, as has frequently been said by this
court, this has not been done, we do not feel called upon
to review the action of the judge, unless injustice have
manifestly resulted from his ruling.    We cannot say that
such is the case in the present instance.    It seems quite
clear that some of the proffered testimony should have
been excluded, while other parts of it appear to have been
free from objection.    But if the grounds upon which the
court excluded it had been set out in the bill of exceptions,
it might appear that they were properly sustained.    As,
however, this has not been done, and especially as the
same questions may arise upon another trial, we will not
now undertake to decide them.

For the error in the charge of the court the judgment
is reversed, and the cause

REMANDED.